(No. 71175.—)

*In re* JAMES BERNARD BELL, Attorney, Respondent.

*Opinion filed January 23, 1992.—Rehearing*
*denied March 30, 1992.*

18

Ellyn S. Rosen, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

James Bernard Bell, of Chicago, respondent *pro se.*

JUSTICE BILANDIC delivered the opinion of the court:

On June 15, 1988, the Administrator of the Attorney Registration and Disciplinary Commission (hereinafter ARDC) instituted a disciplinary action against respondent, James Bernard Bell, by filing a 17-count complaint before the ARDC Hearing Board (hereinafter Hearing Board). The complaint alleged that respondent, in violation of numerous provisions of the Illinois Code of Professional Responsibility (hereinafter Code), had: (a) been convicted in Federal court of making false statements to influence a bank; (b) filed a false affidavit before the Supreme Court of Tennessee; (c) neglected the cases of seven clients; and (d) given false letters and sworn statements to the ARDC in response to its inquiries.

On November 22, 1988, the Administrator filed a request to admit facts and genuineness of documents, to which respondent failed to respond. (107 Ill. 2d R. 216.) The Hearing Board granted the Administrator's motion September 15, 1989, thereby establishing the facts set forth in the Administrator's complaint as true and the Administrator's documentary evidence as genuine. After conducting a hearing on the Administrator's complaint against respondent, the Hearing Board issued its report and recommendation on September 15, 1989. It found that the Administrator had sustained his burden of proving the allegations of counts I through X, XII, XIII and

XV by clear and convincing evidence. The Hearing Board recommended that respondent be disbarred. 107 Ill. 2d R. 753(c)(3).

On November 15, 1989, respondent filed exceptions to the Hearing Board's report and recommendation with the ARDC Review Board. (107 Ill. 2d R. 753(e)(1).) Respondent failed to comply with the Review Board's briefing schedule, which resulted in the Review Board's rendering its determination without the benefit of respondent's brief. On June 8, 1990, the Review Board adopted the Hearing Board's findings of fact and conclusion of law, recommending that respondent be disbarred. 107 Ill. 2d R. 753(e)(4).

On June 28, 1990, respondent moved this court to allow his exceptions to the Hearing Board's report to stand as his exceptions to the Review Board's report. (107 Ill. 2d R. 753(e)(5).) We allowed respondent's motion. Respondent also failed to comply with our briefing schedule, requesting three successive extensions in which to file his brief. On July 15, 1991, this court ultimately accepted respondent's brief *instanter*.

Respondent presents the following issues for review by this court: (1) whether this court's discharge of the Rule 761 proceedings against respondent precludes the Administrator from filing a complaint based on respondent's misconduct which led to his indictment and convictions; (2) whether the Administrator has jurisdiction to file a complaint based on the same misconduct; (3) whether application of the Code to misconduct engaged in prior to the Code's effective date violates the constitutional prohibition against *ex post facto* laws; (4) whether the Hearing and Review Boards erred in finding that the Administrator had proven 13 counts of the complaint by clear and convincing evidence; (5) whether the Hearing Board erred in denying respondent's motion for a contin-

uance; and (6) whether the recommended sanction is appropriate.

While not dispositive of the merits of this action, we feel compelled to note that respondent neglected and engaged in dilatory tactics throughout his own disciplinary proceedings. Most telling is the fact that respondent failed to appear on the second day of the hearing before the Hearing Board. As a result, respondent offered no evidence or testimony to controvert the allegations of the Administrator's complaint. We note that the Hearing Board also allowed the Administrator's motion to admit the facts set forth in his complaint and the genuineness of his documentary evidence. Thus, the Administrator's case against respondent stands completely unrebutted. We turn now to a detailed review of the Administrator's case.

I

A. Bank Applications/Federal Convictions

On December 11, 1979, respondent was charged by indictment, in the United States District Court for the Middle District of Tennessee, with five counts of knowingly making false statements to influence a bank. (18 U.S.C. §1014 (1988).) Each count of the indictment related to separate conduct involving five different banks. On March 27, 1980, respondent pled guilty to counts I and IV of the indictment and counts II, III and V were dismissed pursuant to respondent's plea agreement.

Count I of the Administrator's complaint is based on the conduct alleged in the two counts of the indictment to which respondent pled guilty. Counts II through IV of the Administrator's complaint are based on the remaining three counts of the indictment, which were dismissed.

The Administrator presented certified copies of the following documentary evidence to the Hearing Board to support counts I through V of his complaint against respondent: respondent's Federal indictment, respondent's "Petition to Enter Plea of Guilty," the "Judgment and Probation/Commitment Order," and an "Exhibit in Furtherance of Rule 11(f), Federal Rule of Criminal Procedure" prepared by the United States Attorney for the Middle District of Tennessee. This Rule 11(f) exhibit was prepared during the investigation which led to respondent's indictment, and attached to it are photostatic copies of the personal financial statements that respondent furnished to the various banking institutions delineated in the indictment.

On January 26, 1987, the ARDC initiated Supreme Court Rule 761 proceedings (107 Ill. 2d R. 761) against respondent based on his Federal convictions. (*In re* Bell, No. M.R. 4217.) Pursuant to Rule 761, if an attorney is convicted of a crime involving moral turpitude, the Administrator must petition this court to suspend the attorney from the practice of law until further order. (107 Ill. 2d R. 761(b).) Whether to temporarily suspend the attorney pursuant to Rule 761 is a matter of discretion. (107 Ill. 2d R. 761(b).) On February 12, 1987, this court issued a rule to show cause why respondent should not be suspended from the practice of law until further order pursuant to Rule 761. (107 Ill. 2d R. 761.) Respondent answered and this court discharged the rule to show cause on July 15, 1987.

## B. False Affidavit

Respondent was admitted to practice law in Illinois on August 13, 1979. Due to respondent's Federal convictions, on June 16, 1980, the Supreme Court of Tennessee suspended him from practicing law in Tennessee for a period of five years. Pursuant to this order, the Supreme

Court of Tennessee required respondent to file an affidavit listing all jurisdictions where he was admitted to practice law. Respondent's May 14, 1980, affidavit failed to disclose that respondent was admitted to practice law in Illinois. Respondent failed to disclose the falsity of his affidavit to the Supreme Court of Tennessee and likewise failed to disclose his convictions to this court as required by Supreme Court Rule 761(a) (107 Ill. 2d R. 761(a)). It was not until November 13, 1986, that the Administrator discovered respondent's Federal convictions.

Lance Bracy, the chief disciplinary counsel for the Board of Professional Responsibility of the Supreme Court of Tennessee since 1979, testified before the Hearing Board. Bracy testified that under section 18 of the rules of the Supreme Court of Tennessee, an attorney who is suspended or disbarred is required to file an affidavit with the Board stating that he has, *inter alia*, notified the Board of all jurisdictions in which he has been admitted to practice law. Bracy further testified that he learned of respondent's admission to the bar in Illinois in 1986, a fact which respondent never relayed to the Tennessee Board of Professional Responsibility.

Count V of the Administrator's complaint is based on these facts.

Based upon the Federal charges regarding the false bank applications and respondent's false affidavit to the Supreme Court of Tennessee, counts I through V of the Administrator's complaint charged respondent with violating: Rule 1—102(a)(3) (illegal conduct involving moral turpitude) (107 Ill. 2d R. 1—102(a)(3)); Rule 1—102(a)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation) (107 Ill. 2d R. 1—102(a)(4)); Canon 9 (conduct which has the appearance of professional impropriety) (107 Ill. 2d Canon 9); and Supreme Court Rule 771 (conduct which tends to defeat the administration of justice

or brings the legal profession into disrepute) (107 Ill. 2d R. 771).

## C. Neglect

The Administrator's complaint also alleged that respondent neglected the cases of seven of his clients. Respondent's professional neglect involves both criminal and civil matters.

### 1. *Criminal Cases*

In August 1985, respondent agreed to represent David Turner in an appeal of Turner's rape and theft convictions by the circuit court of Cook County. Turner paid respondent a $2,000 fee. Respondent, however, failed to file a brief on Turner's behalf and, on December 20, 1985, the appellate court dismissed Turner's appeal for want of prosecution. On January 21, 1986, respondent successfully motioned the appellate court to vacate its dismissal order and to grant respondent an extension of time to file Turner's brief. Respondent, however, never filed a brief, resulting in Turner's appeal being dismissed a second time for want of prosecution. Respondent never informed his client of this dismissal. In response to Turner's inquiry as to the status of his appeal, the appellate court sent Turner a letter in February 1987 informing him that his appeal had been dismissed on June 12, 1986.

These facts form the basis of count VI of the Administrator's complaint. The Administrator submitted documentary evidence to the Hearing Board to support these facts.

Milton White was charged by indictment in the circuit court of Cook County with the offense of murder. On January 6, 1986, respondent entered his appearance as White's counsel. After respondent failed to appear on White's behalf on six consecutive occasions, the court ap-

pointed the public defender as co-counsel on May 1, 1986. Respondent failed to appear a seventh time. Therefore, the court appointed the public defender as counsel for White on June 13, 1986.

These facts form the basis of count XII of the Administrator's complaint. The Administrator submitted documentary evidence to the Hearing Board to support these facts.

Louise Jones testified before the Hearing Board that, on March 2, 1984, she consulted with respondent regarding appellate representation for her son, Wynrick Jones. Jones had been convicted of murder in California. Mrs. Jones testified that she initially paid respondent $300 to review her son's trial transcript. Respondent scheduled a conference, told Mrs. Jones it was a good case but that he would have to research California law, and requested a $4,000 retainer. Respondent never informed Mrs. Jones that he was not licensed to practice law in California. On March 29, 1984, Mrs. Jones paid respondent $2,000 with the mutual understanding that respondent would not perform any work on the case unless she could provide the remaining $2,000. Unable to raise the remaining balance of the required retainer, Mrs. Jones requested that respondent refund her $2,000. Respondent never refunded Mrs. Jones' money.

These facts form the basis of count XV of the Administrator's complaint.

## 2. Civil Cases

On March 2, 1979, respondent filed a products liability complaint in the United States District Court for the Northern District of Illinois on behalf of Clarence and Nancy Dixson, alleging that, on March 3, 1977, three of the couple's children had consumed cereal distributed by General Mills, Inc., which contained crushed glass. Both Clarence and Nancy Dixson testified before the Hearing

Board that they initially retained another attorney, but were persuaded to transfer the case to respondent, who is Nancy Dixson's nephew. The Dixsons had contact with respondent regarding their case shortly after the March 2, 1977, incident. Thereafter, at least a year passed between contacts with respondent; Mrs. Dixson testified that she telephoned and wrote respondent but could never get any adequate responses from him concerning the case and its status.

The documentary evidence submitted by the Administrator reveals that, after initiating the action on March 2, 1979, respondent failed to appear at the December 28, 1979, status hearing scheduled by the Federal court. Moreover, respondent failed to produce a sample of the cereal, to answer the interrogatories, and to produce his clients for properly noticed depositions. Based on respondent's conduct, the Federal court dismissed the Dixsons' complaint with prejudice on February 19, 1980. (Fed. R. Civ. P. 35, 37(c).) Respondent never took any steps to reinstitute the Dixsons' cause of action and it is now time-barred.

These facts form the basis of count VII of the Administrator's complaint.

On August 12, 1983, Madronica Biddings interviewed with American Airlines, Inc., for employment. During the interview, the agent interviewing her wrote on her application that she was a "bitch." Biddings argued with the agent and obtained possession of the application. Thereafter, Biddings consulted with respondent, who agreed to represent her in a cause of action against American Airlines. Biddings paid respondent a retainer of $250. Biddings testified before the Hearing Board and acknowledged that respondent, at the time he agreed to represent her, informed her that there were numerous problems with her case. Nevertheless, respondent filed an action on her behalf in the circuit court of Cook

County on August 10, 1984. Biddings testified that she called respondent about once a month to inquire about her case and that she had contacted him about 10 times.

The documentary evidence submitted by the Administrator shows that, on May 1, 1985, the defendant filed a motion to dismiss Biddings' complaint for failure to state a cause of action. On June 27, 1985, the court struck plaintiff's complaint in its entirety, giving respondent leave to file an amended complaint within 28 days.

On July 25, 1985, respondent moved the court for an extension in which to file the amended complaint, but failed to provide opposing counsel with notice of the motion. Respondent failed to appear at the next scheduled progress call and Biddings' case was dismissed for want of prosecution. Respondent motioned the court to vacate the dismissal order which was set for hearing on September 26, 1985. However, respondent failed to appear at the scheduled hearing and his motion to vacate was denied on September 26, 1985. Respondent took no further action to reinstate Biddings' cause of action, which is now time-barred.

Biddings testified that the last time she spoke with respondent was in September 1985. At that time, respondent told her that the case was going to court and she might have to testify. Thereafter, Biddings called the clerk of the circuit court herself and discovered that her case had been dismissed for want of prosecution. Biddings further testified that, up to the date of the hearing, respondent had not informed her that her case had been dismissed.

These facts form the basis of count IX of the Administrator's complaint.

On November 14, 1984, respondent petitioned the clerk of the circuit court for the dissolution of Wanda Ferguson's marriage. Ms. Ferguson testified at the hearing that she paid respondent a $450 retainer fee to ob-

tain his services. Ms. Ferguson paid respondent an additional $125 shortly after he filed her dissolution petition.

The Administrator's documentary evidence established that, on May 8, 1985, respondent successfully moved the court for temporary custody and child support on behalf of Ms. Ferguson. However, respondent failed to appear at a trial call on May 9, 1985, and the court dismissed Ms. Ferguson's petition for want of prosecution. Respondent never told Ms. Ferguson that her petition had been dismissed, nor did he ever file a motion to vacate the dismissal order.

Ms. Ferguson testified that, after respondent argued her motion for temporary custody and child support, she made numerous attempts to contact respondent. Either Ms. Ferguson could not reach him or he told her that he would get back to her. She finally reached respondent on July 14, 1986, when he told her that, for an additional $250, he could complete the dissolution within a month. Ms. Ferguson testified that she and her ex-husband paid respondent $125 each in August 1986. Ultimately, Ms. Ferguson had to obtain the services of another lawyer and incurred an additional $689 in attorney fees.

These facts form the basis of count X of the Administrator's complaint.

Finally, Herbert Turner testified before the Hearing Board that he retained respondent in September 1985 to represent H & W Towing concerning a potential purchase of property which it was leasing. Turner paid respondent a $400 retainer fee. Turner provided respondent with the lease, the building appraisal and other documents related to the property in October 1985.

As of December 26, 1985, respondent had taken no action regarding the purchase and had not communicated to Turner in this regard. Therefore, Turner terminated the attorney-client relationship.

Turner testified that, because of respondent's inaction, he was unable to purchase the property. Turner requested respondent to return his check for $400, which respondent failed to do. Turner stated that he had difficulty contacting respondent and could not get any information from him. During cross-examination, Turner testified that the purchase of the property was a pressing matter because the fire department and the city building inspectors had made complaints on the property and he did not want to spend any more money on the building without owning it.

These facts form the basis of count XIII of the Administrator's complaint.

Based on the facts set forth above, counts VI, VII, IX, X, XII, XIII and XV of the Administrator's complaint charged respondent with violating: (a) Rule 1—102(a)(5) (conduct prejudicial to the administration of justice) (107 Ill. 2d R. 1—102(a)(5)); (b) Rule 6—101(a)(3) (neglect of a legal matter entrusted to him) (107 Ill. 2d R. 6—101(a)(3)); (c) Rule 7—101(a)(1) (failure to seek the lawful objectives of his client through reasonably available means) (107 Ill. 2d R. 7—101(a)(1)); (d) Rule 7—101(a)(2) (failure to carry out a contract of employment entered into with a client for professional services) (107 Ill. 2d R. 7—101(a)(2)); (e) Rule 7—101(a)(3) (conduct which prejudiced or damaged a client during the course of the professional relationship) (107 Ill. 2d R. 7—101(a)(3)); (f) Canon 9 (conduct which has the appearance of professional impropriety) (107 Ill. 2d Canon 9); and (g) Supreme Court Rule 771 (conduct which tends to defeat the administration of justice or brings the courts or legal professions into disrepute) (107 Ill. 2d R. 771).

## D. False Testimony Before the ARDC

In August 1986, respondent submitted a written response to the Dixsons' charge before the Administrator.

In this response, respondent stated that, in October 1979, Nancy Dixson admitted to him that she had placed the crushed glass in the cereal and fabricated the lawsuit. Respondent repeated this allegation during his sworn statement before the Administrator on November 12, 1986. Respondent stated that he advised Mrs. Dixson that he would not further assist her in this illegal conduct.

At the hearing before the Hearing Panel, Nancy Dixson testified that she had not fabricated this incident nor had she ever had a conversation with respondent in which she admitted fabricating the occurrence.

These facts form the basis of count VIII of the Administrator's complaint.

Based on the facts set forth above, count VIII of the Administrator's complaint charged respondent with violating: (a) Rule 1—102(a)(3) (conduct involving moral turpitude) (107 Ill. 2d R. 1—102(a)(3)); (b) Rule 1—102(a)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation) (107 Ill. 2d R. 1—102(a)(4)); (c) Canon 9 (conduct which has the appearance of professional impropriety) (107 Ill. 2d Canon 9); and (d) Supreme Court Rule 771 (conduct which tends to defeat the administration of justice or brings the courts or legal profession into disrepute) (107 Ill. 2d R. 771).

## OPINION

Before this court, respondent initially argues that the Administrator is precluded from filing a complaint based on the misconduct which led to his Federal indictment and convictions. Respondent bases his contention upon the fact that this court, in its resolution of the Administrator's Rule 761 proceedings against respondent, did not suspend him on an interim basis at that time. Supreme Court Rule 761, effective July 1, 1984, provides:

"Conviction of a Crime

(a) Notification. It is the duty of an attorney admitted in this State who is convicted in any court of a felony or misdemeanor to notify the Administrator of the conviction in writing within 30 days of the entry of the judgment of conviction. \*\*\*

(b) Conviction of a Crime Involving Moral Turpitude. If an attorney is convicted of a crime involving fraud or moral turpitude, the Administrator shall file a petition with the court alleging the fact of such conviction and praying that the attorney be suspended from the practice of law until further order of the court. \*\*\* [T]he court shall issue a rule to show cause why the attorney should not be suspended from the practice of law until further order of the court. After consideration of the petition and the answer to the rule to show cause, the court may enter an order, effective immediately, suspending the attorney from the practice of law until further order of the court.
\*\*\*

(d) Hearing. Where an attorney has been convicted of a crime involving fraud or moral turpitude, a hearing *shall be* conducted before the Hearing Board to determine whether the crime warrants discipline, and, if so, the extent thereof.

(1) If the attorney has not appealed from the conviction, the Administrator *shall file* a complaint with the Hearing Board alleging the fact of the conviction." (Emphasis added.) 107 Ill. 2d R. 761.

Respondent's convictions for knowingly providing false information to influence a bank constitute the commission of crimes involving moral turpitude. From the language of the rule, it is clear that the Administrator was *required* to file a complaint before the Hearing Board, regardless of whether this court temporarily suspended respondent. The purpose of this rule, when viewed in its entirety, is to allow this court to decide whether the attorney should be temporarily suspended pending an ARDC investigation and hearing to deter-

mine whether the crime ultimately warrants discipline. This court's decision to allow an attorney to continue to practice law pending disciplinary proceedings does not preclude the initiation of disciplinary proceedings based on the same misconduct. Nor does it preclude the ultimate imposition of discipline. See *In re Lunardi* (1989), 127 Ill. 2d 413, 416, 423.

Respondent also argues that the Administrator lacked jurisdiction to file a complaint based on his Federal convictions. Respondent argues that the Administrator's action should be governed by the version of Rule 761 which was in effect on the dates of his misconduct (1976-77) and convictions (March 1980), rather than Rule 761 as amended, effective in July 1984. The earlier version of Rule 761 provided, in part:

> "In any case in which the court has entered an order suspending an attorney until further order of court by reason of his conviction of a crime, *** a further hearing shall be conducted to determine whether the crime warrants discipline, and, if so, the extent thereof." (58 Ill. 2d R. 761.)

Respondent asserts that, according to this version of Rule 761, the Administrator was not authorized to institute a complaint based on misconduct which resulted in a conviction unless this court first suspended the attorney until further order. Respondent argues that, since this court did not suspend him in the Rule 761 proceedings, the Administrator could not base his complaint on respondent's misconduct which resulted in his Federal convictions.

Rule 761 is a procedural rule governing ARDC procedures for initiating certain disciplinary proceedings. Being procedural in nature, the version of Rule 761 which was in effect at the time the Administrator filed his complaint (1988) is the governing rule. (See *Niven v. Siqueira* (1985), 109 Ill. 2d 357, 364.) Thus, we reject re-

spondent's argument and find that, pursuant to Rule 761, effective July 1, 1984, the Administrator had jurisdiction to file a complaint based on respondent's misconduct which resulted in his Federal indictment and convictions. (107 Ill. 2d R. 761(d).) Furthermore, as this court stated in *In re Mitan* (1979), 75 Ill. 2d 118, 124:

> "[B]ecause of the nature of the proceedings before those to whom we have delegated the authority to act, we will not consider technical objections as to the practice and procedures before them, nor can such technical objections bind us or limit our authority to act. [Citation.]"

In a related argument, respondent contends that he was denied due process because the Hearing and Review Boards found that the misconduct which led to his Federal indictment and convictions violated rules of the Code. Respondent argues that this misconduct occurred prior to the Code's July 1, 1980, effective date. (See 79 Ill. 2d R. 1—101 *et seq.*) Therefore, respondent argues, application of the Code to this misconduct has an *ex post facto* effect which violates constitutional prohibitions against *ex post facto* laws. U.S. Const., art. I, §10; Ill. Const. 1970, art. I, §16.

We rejected this argument in *In re Samuels* (1989), 126 Ill. 2d 509. The prohibition against *ex post facto* laws guards against any law " ' "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." ' [Citations.]" (*Samuels*, 126 Ill. 2d at 523.) *Ex post facto* clauses apply only to laws which are criminal or penal in nature. (*Samuels*, 126 Ill. 2d at 523-24.) Illinois disciplinary proceedings are neither criminal nor penal in nature. (*Samuels*, 126 Ill. 2d at 524.) As this court has stated:

> " 'The first purpose of a proceeding to discipline a member of. the bar is to protect members of the public, to maintain the integrity of the legal profession and to safe-

guard the administration of justice from reproach.' [Citations.] 'Punishment is not the object. The object of such an inquiry is to determine whether the attorney is a proper person to be permitted to practice his profession.' [Citation.]" (*In re March* (1978), 71 Ill. 2d 382, 395.)

Therefore, *ex post facto* clauses do not apply to disciplinary proceedings. *Samuels*, 126 Ill. 2d at 524.

Furthermore, we note that, at the time respondent engaged in this misconduct, his acts violated the Illinois State Bar Association's (hereinafter ISBA) Code of Professional Responsibility. (Illinois Code of Professional Responsibility, DR 1—102(A)(3) (attorney shall not engage in illegal conduct involving moral turpitude); DR 1—102(A)(4) (attorney shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation) (rev. 1977).) This court has held that, prior to the adoption of the Code, the ISBA's code provided a safe guide for professional conduct and an attorney could be disciplined for violating it. (*In re Taylor* (1977), 66 Ill. 2d 567, 571.) Therefore, the Code is not a law " ' "which imposes a punishment for an act which was not punishable at the time it was committed" ' " (*Samuels*, 126 Ill. 2d at 523, quoting *Weaver v. Graham* (1981), 450 U.S. 24, 28, 67 L. Ed. 2d 17, 22, 101 S. Ct. 960, 964), and respondent's argument is without merit.

Next respondent argues that the Administrator failed to prove each count of the complaint by clear and convincing evidence. As noted above, the Administrator's case stands uncontradicted. Respondent cannot now, at this late date, present his case by way of argument to this court. To now consider respondent's factual assertions in his brief would elevate these assertions to the level of actual evidence admitted before the Hearing Board. Moreover, our consideration of respondent's assertions would be:

"tantamount to condoning unprofessional, indifferent and dilatory behavior by one charged with professional misconduct. It would *** tend to discourage attorneys from cooperating in disciplinary proceedings and could significantly increase the problems of the Attorney Registration and Disciplinary Commission. We never have and will not now encourage indifference to, or inaction regarding charges of, professional misconduct. [Citations.]" *In re Weston* (1982), 92 Ill. 2d 431, 437.

The Hearing Board found that the Administrator had proven by clear and convincing evidence the allegations contained in counts I through X, XII, XIII and XV. The Hearing Board also found that the Administrator had failed to sustain his burden of proof with respect to counts XI, XIV, XVI and XVII. The Hearing Board is in the best position to evaluate the credibility of witnesses. (*In re Yamaguchi* (1987), 118 Ill. 2d 417, 424.) Its findings of fact are entitled to great weight. (*In re Joyce* (1989), 133 Ill. 2d 16, 29-30.) We will not disturb its findings of fact unless they are against the manifest weight of the evidence. (*In re Lunardi* (1989), 127 Ill. 2d 413, 430.) The Review Board adopted both the findings of fact and conclusions of law of the Hearing Board. Upon careful review of the evidence proffered by the Administrator in this case, we find no reason to disturb the findings of the Hearing and Review Boards. Therefore, we hold that the Administrator has proven counts I through X, XII, XIII and XV by clear and convincing evidence.

Respondent also argues that the Hearing Board erred in denying his request for a continuance on May 17, 1989, the second day of the hearing in this matter. As noted above, respondent failed to appear before the Hearing Board on that day. At the beginning of the hearing, an attorney, Steve Brussard, telephoned the Administrator on respondent's behalf and informed him that respondent would not be able to appear due to a

dental problem. Brussard told the Administrator that respondent had requested him to appear and obtain a continuance. In a separate telephone conversation, Brussard related this information to the chairman of the Hearing Panel. Brussard did not know the name of the dentist who would be treating respondent.

Rule 272 of the ARDC governs continuances in disciplinary proceedings (Dis. Comm'n R. 272 (1987)). Rule 272 provides, in part:

> "No hearing or prehearing conference shall be continued except upon written motion supported by affidavit."

In this case, respondent failed to submit a written motion and affidavit. Respondent did not personally contact the Administrator or the Hearing Board panel to explain his dental problem. Respondent did not provide any documentation of his dental emergency nor did respondent provide the Hearing Board with the name of his treating dentist so that it could verify respondent's dental problem. Under these circumstances, the Hearing Board properly denied respondent's "request" for a continuance.

Finally, respondent contends that the recommended sanction of disbarment is unduly harsh. In a disciplinary matter, the final determination of the appropriateness of the sanction lies solely with this court. (*In re Levin* (1987), 118 Ill. 2d 77, 87.) Although we strive for consistency in the imposition of sanctions, the sanction imposed in each case depends on the unique facts of that case. (*In re Trezise* (1987), 118 Ill. 2d 346, 357.) In determining the appropriate discipline to be imposed, we consider the nature of the violations and the circumstances surrounding the misconduct. (*Samuels*, 126 Ill. 2d at 529.) We must view respondent's actions in relation "to the underlying purposes of our disciplinary process, which purposes are to maintain the integrity of the legal profes-

sion, to protect the administration of justice from reproach, and to safeguard the public." *In re LaPinska* (1978), 72 Ill. 2d 461, 473.

In this case, respondent was convicted of crimes involving moral turpitude in that he knowingly filed false loan application with banks. Conviction of a crime involving moral turpitude is conclusive evidence of respondent's guilt and that discipline is warranted. (*In re Ciardelli* (1987), 118 Ill. 2d 233, 239.) Respondent will be disciplined on the basis of his misconduct which led to his convictions. Therefore, respondent's actual misconduct is relevant to the determination of the appropriate sanction to be imposed. (*Ciardelli*, 118 Ill. 2d at 239.) In this case, respondent was indicted for filing *five* different false loan applications with banks. Respondent filed these false applications on five different occasions with five different banks. These instances of misconduct spanned a period of more than one year. Even though respondent pled guilty to only two instances of misconduct, all five instances are relevant to our determination of what sanction should be imposed.

Respondent also filed a false affidavit before the Supreme Court of Tennessee, failing to inform that court that he was licensed to practice law in Illinois. At the time respondent filed this false affidavit, our Rule 763 was in effect. (107 Ill. 2d R. 763.) Rule 763 provides, in part:

> "If an attorney licensed to practice law in this State and another State is disciplined in the foreign State, he may be subjected to the same discipline in this State ***." (107 Ill. 2d R. 763.)

By failing to inform the Tennessee Supreme Court of his Illinois license, respondent perpetrated a fraud not only upon the high court of Tennessee, but upon this court as well. Perpetration of a fraud upon this court or any tribunal "is conduct of such a serious nature as to warrant

disbarment." *In re Mitan* (1979), 75 Ill. 2d 118, 127; see *In re Yamaguchi* (1987), 118 Ill. 2d 417, 426-27.

In addition, respondent seriously neglected the cases of seven clients, three of which were criminal cases. We note that "more severe discipline is appropriate to deter neglect in criminal cases than in civil cases." (*Levin*, 118 Ill. 2d at 89.) Furthermore, many of respondent's clients in the civil cases were prejudiced by respondent's neglect. The Dixsons' and Biddings' causes of action were time-barred due to respondent's inaction. All cases respondent filed were dismissed for want of prosecution. Ms. Ferguson had to hire another attorney to obtain her divorce and incurred nearly $700 in additional attorney fees despite the money that she had already paid respondent. Ms. Jones paid respondent $2,000 as a retainer to represent her son's criminal appeal in California. Clearly, respondent knew that she was paying him for professional services that he was unable to provide since he was not licensed to practice law in California. Herbert Turner lost an opportunity to purchase the building he was leasing due to respondent's neglect.

Moreover, all of the client-complainants in this case were repeatedly misled by respondent concerning the status of their cases. Respondent avoided and neglected his professional duties towards these clients. Essentially, each client paid respondent for legal services which he failed to provide. This type of neglect and misrepresentation warrants disbarment. *In re Behnke* (1989), 127 Ill. 2d 322; *Levin*, 118 Ill. 2d 77.

Finally, respondent gave a false written response to the Administrator in regards to the Dixsons' complaint. Respondent repeated this false response in his sworn statement before the Administrator. We have held that "the giving of false testimony demonstrates a further unfitness of an attorney to practice law." *In re Stillo* (1977), 68 Ill. 2d 49, 55.

In light of the several instances and types of respondent's misconduct, we agree with the Hearing and Review Boards' recommendations of disbarment. As noted above, any single type of misconduct in which respondent has engaged has warranted disbarment in the past. Cumulatively, respondent has demonstrated that we cannot allow him to continue in the practice of law and invite the public to retain his services.

Accordingly, it is ordered that respondent be disbarred.

*Respondent disbarred.*