631 N.E.2d 797 (1994)
259 Ill. App.3d 328
197 Ill.Dec. 575
In the Matter of the ESTATE OF Dewey SAVAGE, Deceased (Dewey Savage, Jr., and Roger Savage, Plaintiffs-Appellees, v. Sharon Cochran and David Cochran, Defendants-Appellants).
No. 4-93-0547.
Appellate Court of Illinois, Fourth District.
Argued January 25, 1994.
Decided March 11, 1994.
*798 Frank H. Byers II (argued), Fuller, Hopp, McCarthy, Quigg & Byers, Decatur, for defendants-appellants.
Jeff Justice (argued), Campbell & Robinson, Decatur, for plaintiffs-appellees.
Justice LUND delivered the opinion of the court:
Defendants Sharon Cochran and David Cochran appeal from a judgment of the circuit court of Macon County awarding each plaintiff, Dewey Savage, Jr., and Robert Savage, $31,354.61 compensatory damages and $5,000 punitive damages. Plaintiffs are Sharon's brothers, and the cause of action *799 was based upon alleged fiduciary violations involving their father's assets.
The allegations of fiduciary violations involved Sharon and David using, for their own use, funds placed in a joint account by the father, Dewey Savage, Sr. The funds were removed from the account by Sharon after her father designated her his power of attorney. The accounts containing the funds were joint tenancy accounts with right of survivorship. The trial court specifically found the accounts were convenience accounts, thus limited to the father's expenses and not subject to the survivorship provision. The conclusion of convenience accounts destroys the survivorship provision of the accounts and requires one with a power of attorney to act as a fiduciary. (In re Estate of Blom (1992), 234 Ill.App.3d 517, 519, 175 Ill.Dec. 496, 498, 600 N.E.2d 427, 429.) Evidence established that from April 1987, the time of the power of attorney designation, until his death in March 1991 at age 92, total assets, savings, and income of Dewey, Sr., in these accounts totaled approximately $154,000. At the time of his death, the accounts had been totally depleted. Approximately $53,000 had been spent for the benefit of the father and the balance used for the benefit of Sharon and David. A debt for the father's nursing home treatment was unpaid.
Once the power of attorney was executed, Sharon was responsible as a fiduciary to her father. (White v. Raines (1991), 215 Ill.App.3d 49, 59, 158 Ill.Dec. 478, 485, 574 N.E.2d 272, 279.) A presumption of fraud would attach to a transfer made by the fiduciary for her own use. (Franciscan Sisters Health Care Corp. v. Dean (1983), 95 Ill.2d 452, 464, 69 Ill.Dec. 960, 965-66, 448 N.E.2d 872, 877-78.) However, a conflicting presumption arose from the joint tenancy with survivorship creation and this presumption, like the fraud presumption, can only be rebutted by clear and convincing evidence. Murgic v. Granite City Trust & Savings Bank (1964), 31 Ill.2d 587, 590-91, 202 N.E.2d 470, 472; Blom, 234 Ill.App.3d at 519, 175 Ill.Dec. at 498, 600 N.E.2d at 429.
The issue of importance before our court is whether the trial court's decision of convenience accounts is against the manifest weight of the evidence, considering the presumption of donative intent as described in Murgic. The trial court's findings of fact will not be disturbed unless they are contrary to the manifest weight of the evidence. (White, 215 Ill.App.3d at 60, 158 Ill.Dec. at 486, 574 N.E.2d at 280.) However, the clear and convincing test must be satisfied.
Evidence established that Dewey, Sr.'s wife died in 1985 and that he enjoyed a close relationship with Sharon. He visited with Sharon, and she assisted him with his meals. She was principally responsible for handling his financial matters until his death. His son Dewey, Jr., lived on the west coast and was seldom in Macon County. His son Roger was a certified public accountant (CPA), and he completed income tax returns for his father. Roger left Decatur in 1988 and, at the time of trial, lived in Virginia. Prior to the power of attorney, the father made gifts to Sharon of approximately $11,000. Part of this amount may have been repayment for improvements made by Sharon and David to her parents' home prior to the death of her mother. Dewey, Sr., indicated by letter his deep feelings for Sharon and his preference for her.
The joint accounts were created before the power of attorney, and both Sharon and Roger were named on the accounts. Roger considered this was done for convenience purposes. Sometime after Roger's move in 1988, his name was removed from the accounts. This was after Sharon had her father's power of attorney. Evidence of how Roger's name was removed was not presented. David's name was subsequently placed on the accounts, but he did not participate in check writing. He was given checks signed by Sharon to pay his personal debt at a credit union and debts he owed for child support.
The father's home was sold and funds from the sale were placed in the joint accounts, along with all his pension and retirement income. All his assets were eventually deposited to these accounts. His living arrangements were varied, but he finally entered nursing home care. Public assistance was requested but denied, due to lack of *800 information. Dewey, Sr., stopped writing checks on the account after March 27, 1988.
Dewey, Sr., had executed a will in 1980, leaving all his assets equally to his three children. A very few of the many checks written by Sharon were signed "Sharon Cochran[,] P.O.A.," but all except one so signed preceded execution of the power of attorney.
The fact that all assets of Dewey, Sr., were deposited to the joint accounts adds to evidence rebutting a donative intent. He knew these accounts would be necessary for his continuing expenses, as he was at an age where considerable expenses could be incurred for special care. To conclude that a donative intent existed would require a belief that others could use funds necessary for his care.
The donative presumption was also in conflict with the indications of Dewey, Sr.'s will. Moreover, the existence of Roger's name on the accounts would have indicated Roger was to share in the account. No adequate explanation is given for the removal of Roger's name (after Sharon was changed to a fiduciary) from the account. No explanation was given as to how or why David's name was added to the account.
The conclusion reached by the court that the accounts were convenience accounts was not against the manifest weight of the evidence. A contrary conclusion would indicate a lack of concern by Dewey, Sr., for his own financial security. Sharon's presumed use of the account funds while acting as a fiduciary was fraudulent.
David contends he did not have a fiduciary or confidential relationship with Dewey, Sr., and any judgment against him is in error. David was given funds from the joint accounts to pay off his credit union and child support indebtedness. He benefited from funds used to pay home mortgage payments and utility bills. This type of benefit continued almost to his father-in-law's death. The trial court was correct in holding that David knowingly received benefits from the wrongful conduct of his wife and that he knowingly aided and abetted Sharon in her activities; thus, he was legally responsible. The court will not be misled by mere devices and subterfuges where fraudulently obtained funds are transferred from one spouse to another. Liability will extend to both. (Roth v. Carlyle Real Estate Limited Partnership VII (1984), 129 Ill.App.3d 433, 438, 84 Ill.Dec. 699, 702, 472 N.E.2d 836, 839.) While Roth involved a constructive trust, the policy equally applies to the current fact situation.
Defendants also contend the trial court erred in awarding $5,000 in punitive damages against each of them. The purpose of awarding punitive damages is to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future. Punitive damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard for the rights of others, or for conduct involving some element of outrage similar to that found in crime. Because of their penal nature, punitive damages are not favored in the law and caution must be used to see that they are not unwisely awarded. (Homewood Fishing Club v. Archer Daniels Midland Co. (1992), 239 Ill. App.3d 102, 115, 179 Ill.Dec. 126, 134, 605 N.E.2d 1140, 1148.) However, a trial court's decision to award punitive damages will not be reversed absent an abuse of discretion. (Hagshenas v. Gaylord (1990), 199 Ill.App.3d 60, 78, 145 Ill.Dec. 546, 558, 557 N.E.2d 316, 328.) Under the facts in this case, we find no abuse of discretion.
Defendants also contend the trial court erred in admitting plaintiffs' exhibit Nos. 1 through 7, 17, and 43 through 50, over defendants' objection as to their lack of foundation. Exhibit Nos. 1 through 7 and 17 were summaries of Dewey, Sr.'s bank records prepared by Roger. Roger testified he was a CPA licensed in Illinois and that the summaries were based upon a complete audit of decedent's bank records. Plaintiffs' exhibit Nos. 43 through 50 were the actual records upon which these summaries were based. The records were present in court and were at all times accessible to defendants. The court was careful to check the accuracy of *801 the summaries and questioned Roger extensively regarding his compilation of the exhibits. Following the court's questioning, plaintiffs' attorney questioned Roger in order to lay a foundation for their admission into evidence. In allowing the exhibits to be admitted, the trial court stated specifically that reliance upon these summaries was necessary because the actual bank records were so voluminous.
The admission of exhibits is largely within the discretion of the trial court. Where a proper foundation is laid for the admission of summary evidence, the trial court does not abuse its discretion. When original documents are voluminous and cannot be conveniently examined to extract the fact to be proved, any competent witness who has seen the originals may testify to the fact, provided it is capable of being determined by calculation. The documents summarized must be available in court or made available to the opponent. (Landmark Structures, Inc. v. F.E. Holmes & Sons Construction Co. (1990), 195 Ill.App.3d 1036, 1051, 142 Ill.Dec. 595, 604, 552 N.E.2d 1336, 1345.) We find no abuse of the trial court's discretion.
Finally, defendants contend the trial court erred in admitting into evidence plaintiffs' exhibit No. 20, a form letter to Dewey, Sr., from the Macon County Department of Public Aid stating that public aid had been formally denied because he failed to appear at the eligibility hearing. Pam Grider testified she regularly received documents of this nature at Woodlawn and forwarded them to the families. She handled Dewey, Sr.'s original application for public aid and processed the denial letter in question. Defendants objected on the basis that Grider is no longer custodian of these records.
Illinois Supreme Court Rule 236 (134 Ill.2d R. 236) provides an exception to the hearsay rule for records of regularly conducted activities of any business. A sufficient foundation for admitting records of regularly conducted business activities may be established through testimony of the custodian of these records or another person familiar with the business and its mode of operation. Neither the original entrant nor an individual possessing personal knowledge of the event need be produced. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.10, at 650-51 (5th ed. 1990).) The fact that Grider is no longer employed at Woodlawn does not affect the admissibility of these records. Her familiarity with preparation of public aid applications and her role in processing the results were part of her regular duties at Woodlawn. We find no abuse of the trial court's discretion in admitting plaintiffs' exhibit No. 20.
Affirmed.
GREEN, J., concurs.
COOK, J., dissents.
Justice COOK, dissenting:
I respectfully dissent.
In 1985 Dewey Savage, Sr., opened a joint checking account at Mount Zion State Bank and Trust Company. He named his daughter Sharon and his son Roger as joint tenants on that account. About the same time he changed over a money market account which he had held in joint tenancy with his deceased wife, also naming Sharon and Roger as joint tenants on that account. Dewey, Sr., had held two $25,000 certificates of deposit (CDs) in joint tenancy with his deceased wife. In 1987 Dewey, Sr., changed the registration of the CDs to add Sharon's name as a joint tenant. At some point Roger's name was removed from the joint accounts, apparently by Dewey, Sr.
The trial court made the following finding:
"That in this case, the Court believes that the intention of the formation of the joint accounts was to create `convenience accounts' for the daughter to help her elderly father pay bills. It was not his intention for his daughter to spend all his money and force him to apply for public aid before his death."
A convenience account is an account, apparently held in some form of joint tenancy, where in fact the creator did not intend the other tenant to have any interest, present or future, but had some other intent in creating the account. An example of a convenience account is an account where the creator only *802 wanted the other tenant to write checks at the creator's direction, and not to have any share in the account during the creator's life or on the creator's death. (In re Estate of Harms (1992), 236 Ill.App.3d 630, 634, 177 Ill.Dec. 256, 260, 603 N.E.2d 37, 41.) The creation of a joint tenancy account gives rise to a presumption of donative intent, and a party claiming that the account is only a convenience account has the burden of proving by clear and convincing evidence that a gift was not intended. Murgic v. Granite City Trust & Savings Bank (1964), 31 Ill.2d 587, 589, 202 N.E.2d 470, 471-72.
The evidence in no way supports the trial court's conclusion that these were only convenience accounts, and that Dewey, Sr., did not intend Sharon to have any interest in the accounts either during his life or on his death. It was not necessary that Sharon write checks for Dewey, Sr., at the time the joint checking account was created. Dewey, Sr., continued to write his own checks until March 1988. Certainly Sharon's name was not placed on the money market account or the CDs so that she could write checks, as those assets were not checking accounts. The evidence indicates that Dewey, Sr., placed every asset he owned into joint tenancy, something not to be expected of one who only wants help in paying his bills. The fact that Sharon made substantial deposits to the checking account is inconsistent with the idea the account was only a convenience account. Even if the trial court is correct that Dewey, Sr., created the joint checking account so that he would have help in paying his bills, that fact is not inconsistent with an intention on Dewey, Sr.'s part that his surviving joint tenant would take the account on his death. In re Estate of Taggart (1973), 15 Ill.App.3d 1079, 1084-85, 305 N.E.2d 301, 305 (intent to create present interest in account may be rebutted, intent to vest title in survivor conclusive).
It is not improbable that Dewey, Sr., would have preferred Sharon over his two sons. Sharon lived near her father, saw him frequently, and was a great help to him in his last years. Dewey, Sr., frequently expressed his closeness to Sharon and his intention to prefer her in the distribution of his estate. Dewey made outright gifts to Sharon but not to his sons. The two sons hardly ever visited their father, were of little help to him except for Roger, who prepared his income tax returns, and may not have been on good terms with him. The striking thing about this case is that Dewey, Jr., whose name was never on any of the joint accounts, and who had almost nothing to do with his father, is treated equally with Sharon and Roger by the trial court's order. Even if there were no presumption of donative intent, the evidence that Dewey, Sr., intended the survivor of his joint accounts to have those accounts is very strong in this case.
Dewey, Sr., gave Sharon his power of attorney on April 17, 1987. Sharon argues that power was never used, and the record seems to support her in that. None of the transactions done by Sharon required the use of the power of attorney. When Dewey, Sr.'s home was sold the proceeds were deposited into the joint money market account. Roger argues that Sharon made that deposit, but Dewey, Sr., was present at the closing. Dewey, Sr., himself had sold stock in 1986 and deposited those proceeds to the joint money market account. Even if Sharon did make the deposit of the home proceeds, she was entitled to follow the custom and practice employed by Dewey in making deposits. (Harms, 236 Ill.App.3d at 640, 177 Ill.Dec. at 263-64, 603 N.E.2d at 44-45.) Because all Dewey's accounts were joint accounts, any deposit to an existing account would have resulted in the funds being held jointly.
The most serious complaint about Sharon is that she used the jointly held funds for her own personal benefit. If Sharon had a present interest in the accounts, she was entitled to use the funds. If the trial court determined that Sharon had no present interest, it should have directed that the funds taken be returned to the accounts, where of course they would have passed to Sharon anyway, by right of survivorship. (See Harms, 236 Ill.App.3d at 640, 177 Ill.Dec. at 263, 603 N.E.2d at 44.) The trial court was concerned that Dewey, Sr. (or Sharon on his behalf), was forced to apply for public aid. While Sharon's conduct in reducing Dewey, Sr.'s assets to a level which would qualify him for *803 public aid may be criticized, it appears that the Department of Public Aid approves of such conduct. See Brengola-Sorrentino v. Department of Public Aid (1984), 129 Ill. App.3d 566, 573, 84 Ill.Dec. 740, 745, 472 N.E.2d 877, 882 (failure to advise plaintiff of Department's asset-reduction policy violated her due process rights).
In my view Sharon had at least a right of survivorship in all these joint accounts. Although it is possible she wronged Dewey, Sr., by her personal expenditures, she did not commit any wrong against her brothers. As the decision in favor of the brothers should be reversed, the award of punitive damages would also fall.