THE DEPARTMENT OF CORRECTIONS, *ex rel.* THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MATTHEW ADAMS, No. N60078, Defendant-Appellant.

Fourth District   No. 4—94—1050

Opinion filed April 23, 1996.

GREEN, J., dissenting.

Mark A. Irpino, of Irpino & Miller, of Inverness, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In October 1992, plaintiff, Illinois Department of Corrections (Department), sued defendant, Matthew Adams, to recover costs it had incurred during Adams' incarceration, pursuant to section 3—7—6 of the Unified Code of Corrections (Code) (730 ILCS 5/3—7—6 (West 1992)). Following a bench trial in October 1994, the trial court entered judgment for plaintiff in the amount of $88,988.29.

Defendant appeals, arguing first that section 3—7—6 of the Code is unconstitutional because it (1) violates the *ex post facto* clause of the United States Constitution (U.S. Const., art. I, § 10) as applied to defendant, (2) constitutes cruel and unusual punishment in violation of the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and violates the limitation-of-penalties-after-conviction clause in article I, section 11, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11), and (3) violates the due process clause of the fifth amendment of the United States Constitution as applied to the states through the fourteenth amendment (U.S. Const., amends. V, XIV). Defendant also argues that the Department did not prove his ability to pay and that the trial court erred in admitting statistical summaries to prove the costs of incarcerating him.

We affirm.

## I. BACKGROUND

Department records show two periods of incarceration for defendant: (1) one beginning on January 10, 1986, and ending March 27, 1988; and (2) another beginning April 12, 1991, and continuing through the date of the bench trial in October 1994. At trial, the Department presented evidence showing the periods that defendant was incarcerated at each of several correctional facilities, the actual expenditure for each facility during the period of defendant's confinement, the average daily population for each facility during that period, and the average cost of incarceration for a generic inmate at each facility during that period. Based on this evidence, the Department calculated the total cost of defendant's incarceration at $88,988.29. The Department also presented testimony that defendant had a balance of $833.12 in his inmate trust fund and that $774.94 of that balance was not protected from a collection action. Defendant offered no evidence, choosing not to appear at trial.

■ More than three years before defendant was first incarcerated, the Illinois legislature added the following provision to the Code:

"The Director may require convicted persons committed to Department correctional institutions or facilities to reimburse the Department for the expenses incurred by their incarceration to

the extent of their ability to pay for such expenses. The Attorney General, upon authorization of the Director, may institute actions in the name of the people of the State of Illinois to recover from convicted persons committed to Department correctional institutions or facilities the expenses incurred by their confinement. Such expenses recovered shall be paid into the General Revenue Fund." Ill. Rev. Stat. 1983, ch. 38, par. 1003—7—6.

See also Pub. Act 82—717, § 2, eff. July 1, 1982 (1981 Ill. Laws 3819, 3820).

In 1987, the legislature eliminated the last sentence of this section regarding submission of the expenses to the general revenue fund. Ill. Rev. Stat. 1989, ch. 38, par. 1003—7—6; see Pub. Act 85—736, § 2, eff. September 22, 1987 (1987 Ill. Laws 3145, 3146). Then in 1991, the legislature substituted the phrase, "The Director shall, when reasonably able, require" (Pub. Act 86—1320, § 6, eff. January 1, 1991 (1990 Ill. Laws 2387)) for the phrase "The Director may require" (Ill. Rev. Stat. 1989, ch. 38, par. 1003—7—6). Further, the phrase "shall institute actions" (Pub. Act 86—1320, § 6, eff. January 1, 1991 (1990 Ill. Laws 2387)) was substituted for "may institute actions" (Ill. Rev. Stat. 1989, ch. 38, par. 1003—7—6). Thus, when the trial court entered judgment for the Department in October 1994, section 3—7—6 of the Code read as follows:

"The Director shall, when reasonably able, require convicted persons committed to Department correctional institutions or facilities to reimburse the Department for the expenses incurred by their incarceration to the extent of their ability to pay for such expenses. The Attorney General, upon authorization of the Director, shall institute actions in the name of the people of the State of Illinois to recover from convicted persons committed to Department correctional institutions or facilities the expenses incurred by their confinement." 730 ILCS 5/3—7—6 (West 1992).

## II. CONSTITUTIONAL ISSUES

■ Illinois courts always begin their analysis of the constitutionality of legislation with the presumption that the statute is constitutional. *Rehg v. Illinois Department of Revenue*, 152 Ill. 2d 504, 511-12, 605 N.E.2d 525, 529 (1992), *overruled on other grounds Wilson v. Department of Revenue*, 169 Ill. 2d 306 (1996). The party challenging the statute bears the burden of "clearly establishing that the statute is unconstitutional." *Rehg*, 152 Ill. 2d at 512, 605 N.E.2d at 529.

### A. The *Ex Post Facto* Clause

■ Defendant argues that section 3—7—6 of the Code, as applied to him, violates the federal constitution's *ex post facto* prohibition by increasing his punishment for past crimes. See U.S. Const., art. I,

§ 10; *Dobbert v. Florida*, 432 U.S. 282, 292-93, 53 L. Ed. 2d 344, 355-56, 97 S. Ct. 2290, 2298 (1977). However, the *ex post facto* clause only applies to laws which are criminal or penal. *In re Bell*, 147 Ill. 2d 15, 34, 588 N.E.2d 1093, 1101 (1992). Thus, we must first consider whether section 3—7—6 of the Code is punitive in nature.

■ To determine whether legislation is punitive, the Supreme Court of Illinois in *Rehg* has relied on the factors set out by the United States Supreme Court which include:

> " '[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned ***.' " *Rehg*, 152 Ill. 2d at 514, 605 N.E.2d at 530, quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 9 L. Ed. 2d 644, 661, 83 S. Ct. 554, 567-68 (1963).

■ Applying these factors in this case demonstrates that section 3—7—6 of the Code is not punitive: (1) requiring an inmate to pay the costs of his incarceration does not involve an affirmative disability or restraint, nor has it historically been regarded as a punishment; (2) liability under the Code is absolute and not based upon *scienter*; (3) although liability arises as the result of a crime, the act of being incarcerated is not itself a crime; (4) reimbursement for incarceration fulfills the legitimate purpose of defraying costs imposed upon the State; and (5) reimbursement for costs incurred is not excessive in relation to that purpose.

We note that similar statutory provisions have been found to be nonpunitive. See *People v. Willhoite*, 212 Ill. App. 3d 307, 311, 571 N.E.2d 249, 252 (1991) (probation fee not punitive). We also note that in a somewhat different context—determining whether a civil penalty constitutes "punishment" for double jeopardy purposes—the supreme court recently wrote the following:

> "The [Supreme] Court [has] noted that it was the purposes actually served by the [civil] sanction in question, not the underlying nature of the proceeding giving rise +o the sanction, that must be evaluated. ***
>
> *** 'Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled

to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.' " *In re P.S.*, 169 Ill. 2d 260, 279-80, 661 N.E.2d 329, 338-39 (1996), quoting *United States v. Halper*, 490 U.S. 435, 449, 104 L. Ed. 2d 487, 502, 109 S. Ct. 1892, 1902 (1989).

We view our conclusion here—that section 3—7—6 of the Code is not a criminal or penal law—as consistent with the views expressed in *P.S.* and *Halper*. As those cases point out, although the reimbursement requirement here is a civil sanction, it could still be deemed punitive if it is disproportionate to the damages suffered by the government. See also *Rehg*, 152 Ill. 2d at 524, 605 N.E.2d at 535. However, in this case, the size of the judgment *equals* the costs incurred by the State.

### B. Cruel and Unusual Punishment

Defendant next argues that section 3—7—6 of the Code violates (1) the eighth amendment of the United States Constitution because it is cruel and unusual punishment, and (2) the limitation-of-penalties-after-conviction clause, article I, section 11, of the Illinois Constitution. Specifically, defendant claims that requiring reimbursement is cruel and unusual because it "has no relationship to any misconduct on [his] part." We disagree.

■ The eighth amendment provides as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII.

Article I, section 11, of the Illinois Constitution of 1970 provides as follows:

"All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. No conviction shall work corruption of blood or forfeiture of estate. No person shall be transported out of the State for an offense committed within the State." Ill. Const. 1970, art. I, § 11.

■ The United States Supreme Court has construed the eighth amendment to apply only to the "criminal process and *** direct actions initiated by government to inflict punishment." *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 260, 106 L. Ed. 2d 219, 228, 109 S. Ct. 2909, 2912 (1989). We deem article I, section 11, of the Illinois Constitution of 1970 to be the Illinois constitutional equivalent of the eighth amendment, and we similarly limit its application to the criminal process and direct actions initiated by government to inflict punishment.

As we earlier held, the statute requiring reimbursement for the costs of incarceration is compensatory, not punitive. Therefore, sec-

tion 3—7—6 of the Code implicates neither the eighth amendment nor the limitation-on-penalties clause of the Illinois Constitution.

## C. Due Process Claims

◼ Defendant next argues that section 3—7—6 of the Code violates due process, in contravention of the fifth and fourteenth amendments of the United States Constitution, because it did not provide him with adequate notice of its meaning. We disagree.

A statute does not violate the due process clause of the United States or the Illinois Constitution on the ground of vagueness if it is explicit enough to serve as a guide to those who must comply with it. *Ardt v. Illinois Department of Professional Regulation*, 154 Ill. 2d 138, 157, 607 N.E.2d 1226, 1235 (1992). Section 3—7—6 of the Code easily passes this test.

Defendant also seems to argue that the statute does not clearly inform him what conduct is unlawful. However, as we earlier held, section 3—7—6 is not a penal or criminal statute. Thus, the "void-for-vagueness" analysis that applies to penal statutes does not apply in this case.

## III. DEFENDANT'S ABILITY TO PAY

◼ Section 3—7—6 of the Code envisions requiring Department inmates to pay the costs of their incarceration "to the extent of their ability" to do so, but it does not state who has the burden of proof regarding an inmate's ability to pay, nor at what point in the proceedings the trial court must address this issue. 730 ILCS 5/3—7—6 (West 1992). Defendant argues that his ability to pay is an element of the cause of action that the Department must plead and prove. He also contends that section 3—7—6 of the Code limits an award of reimbursement to the amount defendant is able to pay. We disagree.

The legislature expects the Department to use section 3—7—6 of the Code to recover, to the extent possible, the costs of incarcerating convicted felons. Because the legislature understood that many Department inmates would have few resources to pay those costs, it provided that the trial courts should order such payments only to the extent of the inmates' ability to pay. However, the legislature, by this grant of legislative grace, did not intend to create an exception that would swallow the rule. To place the burden on the Department, as plaintiff argues, of both pleading and proving "the extent of [his] ability to pay" would have such an effect because this burden would prove too difficult and time-consuming. Thus, we agree with the Department that the legislature intended this grant of legislative grace to be applied by the courts *after* they have determined what judgment for reimbursement should be entered, and then only to the

extent that a defendant demonstrates that he lacks the ability to pay the proposed judgment. We agree with the Department's argument that "[n]o one is better able to show the expenses of incarceration than the Department[,] and no one is better able to show a prisoner's ability or inability to pay those expenses than the prisoner himself. Placing the burden of showing inability to pay on the prisoner is the only practical method."

In this case, defendant offered no evidence that he was unable to pay. Accordingly, the trial court had no reason not to enter judgment for the Department in the amount of $88,988.29, the full amount the Department claimed.

## IV. ADMISSIBILITY OF STATISTICAL SURVEYS

■ Defendant next argues that the trial court erred in admitting records offered by the Department to establish the costs it wished to recover. Defendant claims that the records constituted hearsay and did not satisfy the business record exception. We disagree.

During the trial, the Department called John Huffman, a certified public accountant employed by the Department for over 15 years. Huffman supervises the accounting section of the Department, which maintains accounting records, posts costs and expenditures, and reconciles the Department's accounting records with those of the comptroller's office. Huffman's duties involve generating records reflecting time periods and placements made during an inmate's incarceration, the cost of incarceration of particular inmates, and the transactions that occur in an inmate's trust account.

Huffman testified about the records at issue, which showed how long defendant resided in particular correctional facilities, the actual expenditure for that facility during the period of his incarceration, the average daily population of that facility during the period defendant resided there, and, as calculated by Huffman, the average cost of incarceration in that particular facility for that period of time. The sum of costs of defendant's incarceration at each of the facilities totalled $88,988.29.

Illinois Supreme Court Rule 236 (145 Ill. 2d R. 236) provides an exception to the hearsay rule for records of regularly conducted activities of any business. A party may establish a foundation for admitting business records through testimony of the records custodian or of another person familiar with the business and its mode of operation. *In re Estate of Savage*, 259 Ill. App. 3d 328, 333, 631 N.E.2d 797, 801 (1994). Thus, Huffman's testimony provided a proper foundation for the admission of the business records. Further, when, as here, original documents are voluminous and cannot be

conveniently examined to extract the facts to be proved, a competent witness who has seen the originals may testify to those facts. *Savage*, 259 Ill. App. 3d at 333, 631 N.E.2d at 801.

We also note that the records offered and received into evidence constitute a summary of business records compiled by the Department as required by statute. 730 ILCS 5/3—5—1 (West 1994). Thus, the public records hearsay exception applies to these records. See *Barker v. Eagle Food Centers, Inc.*, 261 Ill. App. 3d 1068, 1073-74, 634 N.E.2d 1276, 1280 (1994).

Huffman testified at length on both direct and cross-examination concerning the information contained in these records. The admission of these exhibits into evidence came within the trial court's discretion, and this court will not reverse that evidentiary decision absent an abuse of discretion. *Savage*, 259 Ill. App. 3d at 333, 631 N.E.2d at 801. We hold that the trial court did not abuse its discretion by admitting the records in question.

## V. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GARMAN, J., concurs.

JUSTICE GREEN, dissenting:

I agree with the well-reasoned portions of the majority opinion holding that the legislation in issue meets constitutional muster and that the evidence presented was admissible. Nevertheless two aspects of the legislation are ambiguous. One question is whether the court is (1) to make determination of the portion of the expense incurred in incarcerating the convict which the convict is able to pay and enter judgment accordingly, or (2) to make determination of the cost of keeping the convict and enter judgment in that amount, leaving the determination of what portion of that sum the convict is able to pay to post-judgment proceedings. The other question concerns the burden of proof in regard to ability to pay.

In regard to the first question, the circuit court indicated it thought that the second procedure with a post-judgment determination of ability to pay was intended. I interpret the majority opinion to indicate it deems the first procedure is applicable. I agree with the majority in that respect. Regardless of which procedure applies, I cannot agree that the ambiguity, if any, as to where the burden of proof on ability to pay lies should be resolved by placing the burden

on the convict. The ability of the convict to pay seems to be an element the cause of action created. Ordinarily, the plaintiff has the burden of proof as to the elements of a cause of action.

The majority would not apply the usual rule here because the convict would have more information about his finances than the Director. Thus, the majority concludes that the sensible interpretation of the legislation is to put the burden of making a showing as to ability to pay on the convict. Because of my concern that such an interpretation may create unnecessary problems, I do not agree that is a sensible construction of the statute.

A prime goal of corrections is that after a convict completes a sentence of incarceration, that convict will become rehabilitated and become a decent citizen. All of society will benefit if that happens but we know that all too often it does not. The rehabilitative task of a convict upon release is often difficult. Placing a substantial financial burden on a convict at that time is counterproductive and I do not think that the legislation involved here is intended to do so. Rather, it is aimed at the few convicts who have substantial assets.

The Director should not proceed against a convict without an investigation which reveals that the convict has substantial assets. With the information obtained by the investigation and the discovery procedures available, the State will not have an undue burden in making a case. I recognize that here, the defendant had counsel who advised defendant to stay away from the hearing. The State could have countered that by requiring his presence by subpoena. We should not permit a bad case to make bad law.

Many convicts who may be faced with similar proceedings may not be able to obtain counsel and will be ineffective in looking out for their rights or too confused or foolish to properly respond to the suit. Particularly, this is likely to occur if the procedure is to have the ability to pay determined post-judgment. The court can do a better job of protecting from an improper or unfair order if the Department has the burden of showing the convict's ability to pay.

I recognize that, in any event, a convict who is subject to a money judgment does have the protection of any judgment debtor under state law and federal bankruptcy law. However, for a convict to have a substantial financial burden upon release is a great disincentive to his becoming productive.

The majority resolves the ambiguity on burden of proof on the basis of what it thinks is the most sensible procedure. For the reasons stated, I deem the placing of the burden on the Department is the sensible way to resolve the ambiguity. Although I have no sympathy for the position of the instant defendant, rather than agree to an interpretation I think is unwise, I would reverse the instant judgment.