In re George ZOIS, Debtor.

**STRUBE CELERY & VEGETABLE CO., INC., Plaintiff,**

v.

**George ZOIS, Defendant.**

**Bankruptcy Nos. 95 B 20495, 95 A 01494.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 21, 1996.

502

Stephen P. McCarron and Louis W. Diess, III, Washington, DC, Steve Cohen, Chicago, IL, for plaintiff.

George Zois, pro se.

### AMENDED MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary case and two other related Adversaries relate to the bankruptcy proceedings filed by Perry Zois, George Zois, and John Zois ("Zoises" or "Debtors") under Chapter 11 of the Bankruptcy Code 11 U.S.C. § 101 et seq., on September 29, 1995. The Debtors' reorganization plans failed to be confirmed, and the three cases were each subsequently converted to a Chapter 7 proceeding. Although each debtor filed individual bankruptcy petitions, all issues pertinent herein are common to all three cases and therefore one memorandum opinion is issued.

On December 1, 1995, Plaintiff Strube Celery & Vegetable Co., Inc. ("Strube") filed three identical, three-count Adversary Complaints against each of the Debtors, under 11 U.S.C. § 523(a)(4), each a seeking declaration that Strube holds a non-dischargeable claim against each of the Zoises for $48,048.06. Strube alleges that the Zoises each incurred this debt for unpaid produce that Strube delivered to Five Star Food Distributors ("Five Star"). The Zoises assertedly were Five Star's officers and agents at the time.

Plaintiff Strube now seeks summary judgment on all counts of each of the three Adversary Complaints, claiming that there are no issues of fact as to the non- dischargeability of the $48,048.06 debt, assertedly due from each of the debtor-defendants.

### Facts as to Which There is no Material Dispute

The following facts emerge from filings of the parties as to which there is no material dispute:

1. Plaintiff Strube is a corporation engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities in interstate commerce.

2. Five Star was an Illinois corporation and was at all times pertinent herein a dealer and commission merchant of produce and therefore subject to provisions of the Perishable Agricultural Commodities Act of 1930 as amended, 7 U.S.C.A. § 499a et seq. (hereinafter "PACA") including the trust provision in that Act.

3. The three Zoises defending here were all officers of Five Star and were also each dealers and commission merchants subject to provisions of PACA.

4. At the request of Five Star and the Zoises, Plaintiff sold to them in interstate commerce various wholesale lots of produce worth $82,661.76. Five Star and the Debtors accepted such produce without paying for delivery.

5. On February 17, 1995, prior to the bankruptcy filing of these defendants, the United States District Court for the Northern District of Illinois entered judgment in favor of Plaintiff and against each of the Debtors and Five Star, jointly and severally, in the amount of $82,661.76 by reason of the delivery and receipt of said produce (the "Judgment"). The District Judge also declared that amount to be non-dischargeable in bankruptcy. No execution was to issue upon the judgment so long as the Defendants therein would pay Plaintiff the remaining outstanding balance in separate equal weekly installments.

6. Debtors have failed to satisfy the Judgments fully, but have paid approximately $42,000.00 pursuant thereto. Five Star and the Debtors each presently owe the Plaintiff $44,938.16 on the Judgment.

7. On September 29, 1995, George Zois, John Zois, and Perry Zois individually filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, and subsequently converted to Chapter 7.

8. Plaintiff filed three Adversary Complaints against the Zoises, each seeking to have the remaining $44,938.16 excepted from discharge in each of the Zois bankruptcies pursuant to 11 U.S.C. § 523(a)(4) of the Bankruptcy Code.

### Disputed Facts

It was neither alleged nor established for purposes of the summary judgment motion that this Defendant or his company resold or were paid for all the produce purchased from Plaintiff, or if they were paid for resale thereof, how much that amounted to. Defendants each pleaded as an affirmative defense that "products were perishable and Defendant could not market spoiled products." Plaintiff has not offered any materials to contradict that assertion. Moreover, Plaintiff did not demonstrate service of notice required to preserve the PACA trust under 7 U.S.C.A. § 499e(c)(3).

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### SUMMARY JUDGMENT STANDARDS

Summary judgment motions are governed by Fed.R.Civ.P. 56(c) and made applicable to bankruptcy proceedings under Fed. R.Bankr.P. 7056. Summary judgment is granted to avoid unnecessary trials when there are no genuine issues of material fact in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The moving party in a motion for summary judgment has the initial burden of demonstrating that there are no genuine issues of material fact and that judgment in its favor should be granted as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). An issue of material fact will prevent summary judgment if the issue is outcome determinative under applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### DISCUSSION

Count I of each Adversary Complaint requests that the debt balance be found nondischargeable under provisions of 11 U.S.C. § 523(a)(4), which provides that there shall be no discharge from any debt "for fraud or defalcation while acting in a fiduciary capacity...." Plaintiff Strube alleges that a fiduciary relationship existed under PACA, an act that expressly creates a fiduciary relationship between produce suppliers and purchasers.

Count II requests a declaration of nondischargeability because of the Order and Judgment entered by the District Judge declaring that the debt of $82,661.76 due from the Zoises to Strube was non-dischargeable in bankruptcy.

Count III requests a declaration that the Debtors, acting as officers and employees of Five Star, failed to hold in trust the produce and any receivables from the sale of produce purchased from Plaintiff as required by the PACA trust provision. Plaintiff therefore asserts that, because the Debtors each individually failed to abide by the PACA trust provision, they breached their fiduciary duty and committed a defalcation sufficient under 11 U.S.C. § 523(a)(4) to make their debt to Strube non-dischargeable in their individual bankruptcy cases.

The Debtors plead by way of defense that they did comply with all the trust provisions under PACA.

#### Count I—§ 523(a)(4)

As stated, Count I of each of the Adversary Complaints requests declaration that the $44,398.16 debt is non-dischargeable in bankruptcy under § 523(a)(4) of the Bankruptcy Code. 11 U.S.C. § 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity."

Defalcation within the context of § 523(a)(4) is defined as "the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." *Nuchief Sales, Inc. v. Harper (In re Harper)*, 150 B.R. 416, 419 (Bankr. E.D.Tenn.1993). An objective standard is used to determine a defalcation, and intent or

bad faith is not a requirement. *See Green v. Pawlinski (In re Pawlinski),* 170 B.R. 380, 389 (Bankr.N.D.Ill.1994) (Schmetterer, J.); *Blackhawk B.M.X., Inc. v. Anderson (In re Anderson),* 64 B.R. 331, 334 (Bankr.N.D.Ill. 1986); *In re Owens,* 54 B.R. 162, 165 (Bankr. D.S.C.1984). "[Defalcation] can be a mere deficit resulting from the debtor's misconduct, even though he derived no personal gain, and may be through negligence or ignorance rather than misconduct." *See Pawlinski,* 170 B.R. at 389, *citing Purcell v. Janikowski (In re Janikowski),* 60 B.R. 784, 789 (Bankr.N.D.Ill.1986).

■ Here the Zoises each had a fiduciary duty to hold the produce received from Plaintiff Strube and any accounts receivable or proceeds derived from their sale in trust for Strube. This trust arose by operation of federal law under 7 U.S.C.A. § 499a et seq. Under this statute, a trust is automatically created upon delivery and receipt of the produce. In order for the purchaser to maintain the trust, they must hold the produce and any related inventory, accounts receivable, and collections thereon in trust for the benefit of all the buyer's unpaid sellers. *Continental Fruit Co. v. Thomas J. Gatziolis & Co., Inc.,* 774 F.Supp. 449, 450 (N.D.Ill.1991). The PACA trust provision imposes liability upon a purchaser, "whether a corporation or controlling person of that corporation, who uses that trust asset for any purpose other than repayment of the supplier." *Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F.Supp. 346, 348 (S.D.N.Y.1993). It has been held that the PACA trust statute creates a fiduciary capacity for purposes of non-dischargeability under § 523(a)(4). *See Deoudes, Inc. v. Snyder (In re Snyder),* 184 B.R. 473 (D.Md.1995).

Bankruptcy judges have therefore frequently recognized where a debt is incurred in breach of the fiduciary duty imposed by PACA (if the merchant purchasing the produce fails to maintain this trust), the debt becomes non-dischargeable in bankruptcy.

*Snyder,* 184 B.R. 473; *Morris Okun,* 814 F.Supp. 346; *Collins Brothers Corp. and Adams Produce Co., Inc. v. Nix (In re Nix),* 1992 WL 119143 (M.D.Ga.1992); *Fresh Western Marketing v. Pieper (In re Pieper),* 119 B.R. 837 (Bankr.M.D.Fla.1990); *Tom Lange Co. Inc. v. Stout (In re Stout),* 123 B.R. 412 (Bankr.W.D.Ok.1990).

■ In this case, Debtors' receipt of $82,661.76 worth of perishable commodities delivered from the Plaintiff initiated the statutory trust previously under PACA. Although the Debtors may not have had bad faith or intended to have failed to hold proceeds from said produce in trust, bad faith or intent are not required either to establish the trust or to satisfy the element of defalcation. In fact, the Debtors contend in their answer that a "good faith effort was made to pay." However, this is irrelevant and the Debtors failed to maintain the PACA trust. The trust is created by statute, and bad faith or intent to breach PACA is not necessary for such breach to constitute defalcation under § 523(a)(4).

■ The Zoises, as controlling persons of Five Star, are liable for any failure by Five Star to fulfill its fiduciary obligations under PACA which were created as soon as the Zoises took receipt of the produce in question. The Debtors' agents, employees, or officers of Five Star were individually under a fiduciary duty to hold the produce and its proceeds in trust. See 7 U.S.C.A § 499p.[1] The Zoises have not challenged the fact that they were agents, employees, or officers of Five Star, and therefore their acts on behalf of Five Star are to be imputed to them. Courts have generally imparted individual responsibility for breaches of PACA while individuals were in the employ or an officer of a corporation. *See Snyder,* 184 B.R. at 473 (D.Ma.1995); *Morris Okun,* 814 F.Supp. at 347–48; *Nix,* 1992 WL 119143 at *4.

■ The Debtors' allegations of the Plaintiff's wrongdoings constituting an "un-

---

**1.** Under PACA, 7 U.S.C. § 499p provides that "the act, omission, or failure of any agent, officer, or other person acting for or employed by any commission merchant, dealer, or broker, within the scope of his employment or office, shall in every case be deemed the act, omission, or failure of such commission merchant, dealer, or broker, as that of such agent, officer, or other person."

clean hands defense" are unsupported and irrelevant. In their answer, Debtors allege that Strube "interfered" with the their business and "contributed" to (Five Star's) closing. The Zoises also contend that any "defalcation" by them was not caused by their acts but forced on them by the Plaintiff. However, the Debtors fail to support these allegations as required under Fed.R.Bankr.P. 7056 and Local Bankruptcy Rule 402.M and N. Debtors only make undeveloped accusations. As such, Debtors fail to raise any genuine issues of material fact as to Strube's alleged inequitable conduct or to even explain how these allegations are legally relevant.

▪ Plaintiff argues that Debtors received agricultural commodities from Strube and failed to maintain the trust as required by the PACA provisions thus falling $82,-661.76 behind in payments to Strube. Because neither the produce, any accounts receivable therefrom, nor the proceeds thereof are now available to satisfy Plaintiffs' unpaid claims, Plaintiff concludes that Debtors' remaining debt of $44,398.16, for which they are individually responsible is non-dischargeable. There are two gaps in this logic. It first assumes that Defendants sold all the produce and did not discard any that could not be sold as too old or otherwise. Also, Plaintiff's position assumes that it sent the requisite notice to preserve the PACA Trust. That has not yet been demonstrated.

▪ PACA provides that:

[p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C.A. § 499e(c)(2) ("PACA Trust"). The PACA Trust provisions were created in 1984 to protect unpaid produce suppliers and sellers in the case of bankruptcy. H.R.Rep. No. 104–207 (1995), *reprinted in,* 1995 U.S.C.C.A.N. 453; *See also* 7 U.S.C.A. § 499e(c)(1). The PACA Trust consists of perishable goods, products derived from those goods, and all receivables or proceeds from the sale of those goods. 7 U.S.C.A. § 499e(c)(2). As stated, § 523(a)(4) denies discharge to a debtor for a debt for fraud or defalcation while acting in a fiduciary capacity including trust fiduciaries. However, not all statutory trusts are considered "true" trusts for purposes of § 523(a)(4).

▪ The Seventh Circuit distinguishes between an express trust, which is well within the reach of § 523(a)(4), a constructive or resulting trust, which is generally outside § 523(a)(4)'s grasp, and a statutory trust, which may be subject to § 523(a)(4). *Matter of Marchiando,* 13 F.3d 1111, 1115 (7th Cir. 1994) (collecting cases), *cert. denied sub nom., Illinois Dept. of the Lottery v. Marchiando,* —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). Marchiando involved the Illinois Lottery Law which imposes a trust on proceeds of sales of lottery tickets until the proceeds are paid to the lottery department ("Lottery Trust"). Marchiando failed to submit the proceeds from lottery sales and subsequently filed bankruptcy. Illinois filed an adversary complaint seeking a declaration that the debt was nondischargeable under § 523(a)(4). The court disagreed. The court emphasized that there is a distinction between a fiduciary relationship "that has an existence independent of the debtor's wrong and a trust ... that has no existence before the wrong is committed." *Id.* The court noted that the trust did not arise until Marchiando failed to remit the lottery receipts. *Id.* at 1116. *See also Matter of Woldman,* 92 F.3d 546, 547 (7th Cir.1996) (favorably citing *Marchiando* for the holding that § 523(a)(4) does not reach a trust that had a purely nominal existence until the wrong is committed). The court further noted that the distinction between a trust which imposes duties in advance of the breach and one which does not is the in imbalance of power in the relationship. *Marchiando,* 13 F.3d at 1115. With a "true trust," one party is incapable of monitoring the other's perfor-

mance. Thus, the Lottery Trust was found not to be subject to § 523(a)(4).

However, a PACA Trust, while certainly a statutory trust, is distinguishable from an Illinois Lottery Trust. First, the PACA Trust does not arise upon a debtor's failure to remit the purchase price to the seller. Rather, the PACA Trust arises upon the debtor's acceptance of the perishable goods from the seller. *See* H.R.Rep. No. 104–207 (1995). Thus, the PACA Trust has an identity separate from any wrongdoing. Second, unlike the Lottery Trust, where the trust beneficiary was a government agency fully capable of monitoring the trustee's compliance, the beneficiary of the PACA Trust is another merchant and may be "incapable of monitoring the other's performance." *Marchiando,* 13 F.3d at 1116.

▮ Therefore, defalcation while acting as a fiduciary of a PACA Trust is a sufficient ground to warrant denial of discharge under 11 U.S.C. § 523(a)(4).

▮ However, the PACA statutory trust only consists of a buyer's produce-related assets which are held for produce suppliers in the case of a business failure. *See* H.R.Rep. No. 104–207 (1995). The trust is both on the perishable goods and on the receivables and sale proceeds thereof. The trust does not extend under PACA to the debtor's other assets.

A PACA Trust is a "floating trust":

[T]here is no necessity to specifically identify all of the trust assets through each step of the asset accrual and disposal process. Since commingling is contemplated, all trust assets would be subject to the claims of unpaid seller-suppliers and agents to the extent of the amount owed them. Beneficiary claimants have the responsibility of establishing through their business records the details of the transaction on which payment is sought.

H.R.Rep. No. 98–543 (1983), *reprinted in,* 1984 U.S.C.C.A.N. 405.

▮ Although any claimant under PACA has the burden of establishing details of the transaction, there is no need for it to trace the specific commodities furnished by it to the trust assets in the hands of any given defendant. Rather, the burden is on the debtor to show that any disputed assets are not subject to the trust. *Sanzone–Palmisano Co. v. M. Seaman Enterprises, Inc.,* 986 F.2d 1010, 1013 (6th Cir.1993); *Mid–Valley Produce Corp. v. 4–XXX Produce Corp.,* 833 F.Supp. 193, 196 (E.D.N.Y.1993); *In re Richmond Produce Co., Inc.,* 112 B.R. 364, 378 (Bankr.N.D.Cal.1990).

▮ However, to the extent that the trust is on perishable goods, the trust res disappears as the perishable goods perish. "[O]nce the res of a trust disappears, the obligation to pay becomes merely a personal debt, although certain fiduciary duties may remain." *In re Stotler and Co.,* 144 B.R. 385, 391 (N.D.Ill.1992) (*citing* 1 A Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 74.2 (4th ed.1987)). However, these are not the same fiduciary duties as those of a trustee to a trust. Debtors have pleaded in a way suggesting that some of the perishable commodities involved here were spoiled and unmarketable. To the extent, if any, that those items remained unsold, they remained in the PACA Trust, but to the extent, if any, they rotted away unsold, then the trust res disappeared, leaving the obligation to pay for those unsold goods as a personal debt outside the PACA Trust provisions. To the extent, if any, that Debtors' failure to pay Plaintiff was due to Debtors' inability to market any perishable goods involved here, they did not breach their PACA Trust obligations. Thus, to that extent there could not be defalcation under § 523(a)(4). Only to the extent that Debtors did market the perishable commodities and failed to remit payment to Plaintiff did Debtors breached their PACA Trust obligations and thereby effect a defalcation under § 523(a)(4).

▮ However, while a PACA Trust is established on the receipt of the perishable commodities and proceeds thereof, the unpaid seller loses the benefits of the trust unless it takes steps to preserve it. The Act provides that the unpaid seller loses the benefit of the PACA Trust unless the seller has given "written notice of intent to preserve the benefits of the trust" to the merchant within thirty days after the expiration of the

time of payment. 7 U.S.C.A. § 499e(c)(3). Such notice must set forth sufficient detailed information to identify the transaction subject to the trust. *Id.* In addition to this method, the seller may also use billing statements to provide notice of intent to preserve the trust. If so, the statement must include specific language to the effect that the commodities are being sold subject to the PACA Trust provisions. 7 U.S.C.A. § 499e(c)(4).

Plaintiff's Motion for Summary Judgment in each of the three cases fails for two reasons. First, it has not established that the goods in question were all resold, thus bringing the sale proceeds under the PACA Trust. It certainly cannot be presumed that all the goods were sold.

Second, Plaintiff has not established that Strube gave notice pursuant to § 499e(c)(4) in order to preserve the Trust, although such notice was certainly required on the facts presented here. Strube has not even attempted to establish that it gave any notice or complied with the PACA Trust notice provisions.

For reasons stated, in each case Plaintiff's Motion for Summary Judgment will be denied on Count I.

### *The District Court Order—Count II*

Count II requests, pursuant to the District Judge's Order and Judgment entered February 17, 1995, that the Zoises' debt should be declared non-dischargeable. Plaintiff in effect seeks that *res judicata* treatment be given to the District Court's order that the debt was "nondischargeable."

*Res judicata* is designed to ensure the finality of judicial decisions. *Smith v. City of Chicago,* 820 F.2d 916, 917 (7th Cir.1987). A final judgment on the case's merits precludes the parties from relitigating issues that were or could have been raised in that action. *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). *Res judicata* is considered a rule of "fundamental and substantial justice." *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506, 61 L.Ed. 1148 (1917). [*Res judicata*] encourages reliance on judicial decisions, "bars

vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).

The essential elements of *res judicata* are (1) a final judgment on the merits litigated in an earlier action, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties in the two suits. *Smith v. City of Chicago,* 820 F.2d at 917; *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982).

On February 17, 1995, the District Judge entered the following Order and Judgment in favor of the Plaintiff for $82,661.76:

ORDERED that plaintiff, Strube, is a trust creditor under the provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. 499(c) against defendants, Five Star Food Distributor, Inc., John Zois, Perry Zois, George Zois, Dimitrious Christopolous and Solon Kologerakes *on a nondischargeable debt* in the amount of $82,-661.76, and it is further

ORDERED that judgment be and it is hereby entered in favor of plaintiff and against defendants, jointly and severally, in the sum of $82,661.76, and it is further

ORDERED that no execution shall issue upon this judgment nor shall proceedings be taken for its enforcement so long as defendants pay plaintiff the judgment amount ... in separate equal weekly installments of $2,800.00.

(Emphasis supplied.)

It does not appear either from the present record or the District Judge's order and judgment that the "dischargeability" of the debt in bankruptcy was being litigated before the District Court. That issue could not have been litigated at the time because no bankruptcy proceedings had been filed by these Defendants prior to entry of the District Court judgment. Original jurisdiction to determine dischargeability under the Bankruptcy Code arises in the District Court only when a bankruptcy proceeding is filed. 28 U.S.C. § 1334. Under Local District Rule 2.33, authority to hear and determine dischargeability issues is delegated to the bankruptcy judges in the district automatically

upon the bankruptcy filing. At the time he entered the Judgment, the District Judge lacked jurisdiction under 11 U.S.C. § 523(a)(4) because no bankruptcy had been filed at the time. The learned District Judge cut his judicial eyeteeth on the Bankruptcy Code, and it takes more than a word slipped into the judgment order to find an issue that had been litigated over which the Judge at that time lacked jurisdiction.

The issue of dischargeability was not litigated prior to the present Adversary cases. Judgment will thereupon be denied as to Count II.

### Count III

 Count III relies on the same legal theories as does Count I. Plaintiff only adds a request that the Zois brothers be each found personally responsible for the Five Star debt, a determination already made by the District Court judgment. That issue as to personal liability is *res judicata* and any new judgment to the same effect would be improper. Judgment on Count I will adjudicate the non-dischargeability of the individual defendants as to the Judgment debt under the same legal theory on which Count III is based.

However, Count III raises one new claim. Strube seeks judgment *inter alia,* granting Strube "its reasonable costs and disbursements, including attorneys' fees in this action."

Strube seeks attorneys' fees without citing authority for its request in the Complaint or other pleadings. Strube's reason for requesting attorney's fees appears to be the District Court Judgment Order finding that Debtors each owed Strube $82,661.76 which also stated:

> ORDERED that in the event the defendants default in the performance of any obligation under this Order and Judgment, and plaintiff, in its sole discretion, incurs further attorney's fees and/or costs to further protect its rights and collect the remaining sums due under this Order and Judgment, defendants shall be liable to plaintiff for such additional fees and costs, including any and all proceedings to determine such additional fees and costs....

However, the present record does not supply calculations of the fees and disbursements sought in Count III, and it is premature to reach the issue of computing such fees until Count I resolves the issues of dischargeability of the underlying debt.

### CONCLUSION

Accordingly, summary judgment will be denied as to all counts.