**In re KELLY FOOD PRODUCTS, INC., Debtor.**

**G & G SALES CORPORATION, Plaintiff,**

v.

**KELLY FOOD PRODUCTS, INC., Defendant.**

**RED RIVER VALLEY POTATO MARKETING ASSOCIATION, Plaintiff,**

v.

**KELLY FOOD PRODUCTS, INC., Defendant.**

Bankruptcy Case No. 96–72781.
Adversary Nos. 96–7198, 96–7199.

United States Bankruptcy Court,
C.D. Illinois.

Jan. 10, 1997.

Richard P. Klaus, Champaign, IL, for G & G Sales.

Stephen P. McCarron, Louis W. Diess, III, Washington, DC, for Red River Valley.

Barry M. Barash, Galesburg, IL, for Debtor.

Timothy J. Howard, Peoria, IL, for First of America Bank.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The two issues before the Court are (i) the scope of protection provided by preserving the benefits of a PACA trust through the newly-authorized method of placing a statutorily-prescribed statement on a bill or invoice statement as opposed to preserving one's rights through the traditional written

notice, and (ii) whether a PACA statutory trust is a "true trust" or merely a disguised security agreement.

Kelly Food Products, Inc. ("Kelly") is a Chapter 11 Debtor-in-possession. First of America Bank–Illinois, N.A. ("FOA") is Kelly's largest secured creditor with a first priority security interest in virtually all of Kelly's assets, including inventory and accounts receivable. FOA currently holds approximately $330,000 of Kelly's cash assets, to which Plaintiffs claim they are entitled under the provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e. FOA concedes that its first priority security interest in the subject $330,000 would be inferior to a valid PACA trust claim.

This matter is before the Court on Plaintiffs' Motion for Turnover wherein Plaintiffs assert that, as the only protected PACA claimants, they are entitled to have the $330,-000 being held by FOA turned over to them. Kelly objects to the turnover, claiming that the funds are not PACA trust assets because the new method of preserving trust claims, through placing the prescribed language on the invoice or bill, limits the assets subject to the trust claims to the particular inventory and proceeds from their inventory which, Kelly further asserts (and is essentially conceded), are long gone. Kelly cites *In re Zois,* 201 B.R. 501 (Bankr.N.D.Ill.1996) for the proposition that the res of a PACA trust on perishable goods disappears as the perishable goods perish. Plaintiffs counter that the sole purpose and effect of the new subsection was to create another way for suppliers to preserve their rights in the trust and that the new subsection has no bearing on the nature or extent of the PACA trust.

■ PACA creates a non-segregated floating trust on perishable commodities that permits the commingling of trust assets without defeating the trust. *In re Zois, supra* at 509; *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1067 (2d Cir.1995); *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 78 (2d Cir.1990). In order to preserve the trust, 7 U.S.C. § 499e(c)(3) requires that the seller give the purchaser written notice of intent to preserve the PACA trust benefits and file that notice

with the Secretary of Agriculture within a prescribed period of time. The PACA notice must be in writing, state that it is a notice of intent to preserve PACA trust benefits and include certain prescribed information.

In November 15, 1995, 7 U.S.C. § 499e was amended to add subsection (c)(4), which provided an alternative method of preserving the benefits of the PACA trust. Under this amendment, a beneficiary may use ordinary and usual billing or invoice statements to provide notice of the supplier's intent to preserve the trust. To accomplish preservation of the trust benefits under this subsection, the bill or invoice must contain on its face the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4).

In this case, it is conceded that the Plaintiffs preserved their rights under the trust provisions of 7 U.S.C. § 499e(c) through the method set forth in subsection (c)(4) with the required language. Plaintiff G & G Sales Corporation ("G & G") asserts a PACA trust claim in the amount of $259,860.06 and Plaintiff Red River Valley Potato Marketing Association ("Red River") asserts a PACA trust claim is the amount of $181,455.03.

■ On the issue of the scope of the new method of trust preservation under PACA, this appears to be a question of first impression in the federal courts. While there is no judicial precedent interpreting this new subsection, the legislative history provides solid evidence of Congress' intent. H.R.Rep. No. 207, 104th Cong., 1st Sess., at 9 (1995) states in part as follows:

> The amendments to the PACA trust provisions contained in this legislation are intended to strengthen and improve the operation of the trust and eliminate the

expense to USDA in administering these provisions....

To enhance the operation of the trust, an alternate method of preserving trust benefits has been included in the bill. The current requirement to file a trust notice with the USDA is eliminated. Instead, the legislation makes clear that a licensee may use standard invoices or other billing statements to provide notice to the buyer of intent to preserve trust benefits ...

Under current law, the trust is in effect at the time of shipment of the perishable commodity. The unpaid supplier, seller or agent must provide notice of trust coverage to the buyer in order to preserve these trust benefits. Consistent with this principle, this legislation, under paragraph 4 of section 5(c) of PACA, provides that the suppliers, seller, or agent may perfect its trust claim by giving notice to the buyer on the invoice or billing statement. This change to the Act provides both a convenience and cost savings to the unpaid supplier, seller or agent. *The Committee intends the effect of notice provided through the use of usual billing or invoice statements to be the legal equivalent to the current practice of providing notice subsequent to the payment date by means independent of the billing statement or invoice.* (Emphasis added).

It is quite clear that Congress' intent in adding § 499e(c)(4) was to provide a simpler and, for the government, a less expensive way for suppliers to preserve their trust rights. It is equally clear that Congress had no intent to redefine what constitutes the trust res under PACA. If Congress had intended to redefine or limit the trust res, it could have and should have amended § 499e(c)(2), which defines trust res, rather than dealing with the issue in a subsection relating only to preservation. In addition, the last sentence of the legislative history set forth above is very clear about the effect of the amendment—it says that the new method of trust preservation is the legal equivalent of the then current practice of filing notice set forth in subsection (c)(3). It says nothing about providing lesser or different protection through the new alternative manner of preservation. Clearly, if it had been Congress' intent to do what Kelly has asserted, the legislative history would not say that the new method of trust preservation is the legal equivalent of filing notice; moreover, the statute, or at least the legislative history, would have explicitly stated that the alternative method of preservation, though available, provides much more limited protection to suppliers. In fact, in the context of perishable agricultural commodities, the protection provided by § 499e(c)(4) under Kelly's interpretation would be so fleeting as to be virtually meaningless in many contexts where the useful life of the products is only a matter of days. Virtually no informed perishable commodity supplier would use § 499e(c)(4) because of the greatly reduced benefit as compared to the traditional manner of preservation and corresponding trust. Finally, if Kelly's position were correct, Congress would have set a dangerous (and well-camouflaged) trap for unwary sellers with its 1995 amendment, completely undercutting the purpose of PACA, which was enacted to protect such sellers.

Kelly's reliance on *In re Zois, supra,* in support of its position is misplaced. Kelly accurately cites *Zois* for the holding that a PACA trust res consisting of perishable goods disappears as the perishable goods perish. However, this holding does not purport to define or limit the scope of a PACA trust res or alter how a supplier avails itself of PACA protection; in fact, Judge Schmetterer's opinion in *Zois* is in accord with other published precedent on the issues of what constitutes the res of a PACA trust and how a supplier protects its interest in the trust. *Zois* acknowledges that "(t)here is no necessity to specifically identify all of the trust assets through each step of the asset accrual and disposal process. Since commingling is contemplated, all trust assets would be subject to the claims of unpaid seller-suppliers and agents to the extent of the amount owed them." *Zois, supra* at 509, *citing* H.R.Rep. No. 98–543 (1983), reprinted in 1984 U.S.C.C.A.N. 405. In addition, *Zois* acknowledges that a "PACA (t)rust consists of perishable goods, products derived from those goods, and all receivables or proceeds from the sale of those goods." *Zois, supra*

at 508, *citing* 7 U.S.C.A. § 499e(c)(2). Accordingly, the fact that *Zois* recognizes that a PACA trust res may diminish through both liquidation and rotting does little to advance Kelly's position.

■ The second question raised is Kelly's interest in the subject $330,000. Kelly asserts that it has an interest in the funds superior to that of FOA by virtue of the trustee's strong-arm powers under 11 U.S.C. § 551, which Kelly may exercise as a debtor-in-possession pursuant to 11 U.S.C. § 1107(a). However, Kelly concedes that it has no strong-arm powers if the $330,000 is subject to a "true trust"; Kelly argues that the PACA trust is not a "true trust", but is more like a "floating lien" or a "disguised security agreement" under the Uniform Commercial Code. *Defendant's Points & Authorities*, pp. 5–6. Plaintiffs counter that the PACA trust is a "true trust" and, such being the case, Kelly has no interest in the funds and, consequently, no standing to object to the Motion for Turnover.

On the question of whether the PACA trust is a "true trust", the federal courts have unanimously answered the question in the affirmative. *See Matter of Snyder*, 184 B.R. 473, 475 (D.Md.1995) (the PACA trust satisfies all of the requirements of an express trust); *In re Harper*, 150 B.R. 416, 418–19 (Bankr.E.D.Tenn.1993) (PACA trust satisfies express trust requirements); *In re Nix*, 1992 WL 119143, p. 9. (M.D.Ga.) (PACA creates a true trust). Kelly failed to provide, and this Court was unable to find, any case which held that the PACA trust was anything other than a "true trust". Accordingly, Kelly's theory, though innovative, is without any precedential support and hence must be rejected.

■ To summarize, the subject $330,000 is not subject to Kelly's strong-arm powers pursuant to 11 U.S.C. § 551 because it has been properly preserved in a PACA trust, which the Court finds to be a true trust and not a disguised security agreement. Hence, Kelly, by its own admission, has no interest in the $330,000 in the hands of FOA. Even if it had been determined that Kelly had an interest in the funds, the Court finds that, by properly preserving their trust claims pursuant to 7 U.S.C. § 499e(c)(4), Plaintiffs' trust claims are not limited only to receivables attributable to the specific goods described in their invoices, but rather extend to the subject $330,000 as well.

■ As stated above, G & G asserts a PACA trust claim in the amount of $259,-860.06 and Red River's PACA trust claim is for $181,455.03. Hence, the aggregate amount of valid PACA trust claims is $441,-315.09. Plaintiffs and FOA have previously agreed that $20,000 of the available funds should be held back for future administrative costs in collecting accounts receivable, leaving approximately $310,000 available for distribution to valid PACA trust claimants. As G & G's trust claim constitutes 58.88311% of the total valid trust claims, G & G is entitled to 58.88311% of the funds collected by FOA (less $20,000 holdback), or approximately $182,537.64 ($310,000 × .5888311). Red River's claim is 41.11689% of the total valid trust claims; hence Red River is entitled to 41.11689% of the funds collected by FOA (less $20,000 holdback), or approximately $127,462.36 ($310,000 × .4111689).

For the reasons set forth above, Plaintiffs' Motion for Emergency Relief and Immediate Turnover of Trust Funds is granted.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.