In re Norma MCDADE aka Norma J. Clarke, Debtor.

Lexington Health Care Center of Elmhurst, Inc., Plaintiff,

v.

Norma McDade aka Norma J. Clarke, Defendant.

Bankruptcy No. 01 B 14309.
Adversary No. 01 A 00811.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 28, 2002.

Amy A. Aronson, Aronson & Walsh, P.C., Vernon Hills, IL, for Plaintiff.

Kent A. Gaertner, P.C., Mohr & Gaertner, Naperville, IL, for Defendant.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint filed by Lexington Health Care Center of Elmhurst, Inc. (the "Creditor") against the Debtor, Norma McDade (the "Debtor") to determine whether a debt owed by the Debtor to the Creditor should be held non-dischargeable under 11 U.S.C. § 523(a)(4). For the reasons set forth herein, the Court holds that the debt is dischargeable.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. FACTS AND BACKGROUND

Most of the facts are undisputed and have been stipulated to by the parties. The Debtor is the daughter of Norman Clarke, a senior citizen. On August 17, 1998, Norman Clarke was admitted as a resident of the Creditor, which is a long-term care facility. On that date, an Admission Agreement was prepared for Norman Clarke as the resident and was signed by the Debtor as the "responsible party" under the signature space in the document provided for "relative," not on the signature lines identifying her as "guardian," "fiduciary," "trustee" or "other." See Exhibit A to the Complaint and Exhibit A to Debtor's Brief in Support of Her Answer to the Complaint. Paragraph 7 of the Admission Agreement did not specifically identify the Debtor as the responsible party. See Exhibit A to Debtor's Brief in Support of Her Answer to the Complaint at p. 2.

On February 25, 1999, a second Admission Agreement was signed by the Debtor as the "responsible party" using the same signature line for "relative," not on the signature lines identifying her as "guardian," "fiduciary," "trustee" or "other." See Exhibit B to Debtor's Brief in Support of Her Answer to the Complaint and Exhibit D to Creditor's Brief in Support of its Complaint. Pursuant to this Admission Agreement, which is identical in form to the previous Admission Agreement, the responsible party and the resident have enumerated rights and responsibilities. Para-

graph 7 of the Admission Agreement states:

> **RESPONSIBLE PARTY:** As used in this Agreement, the Responsible Party shall mean *[the Debtor]*, who is/are jointly and severally liable, along with [Norman Clarke], to the same extent that [Norman Clarke] would be monetarily responsible for any and all charges incurred, and who hereby expressly accept(s) full responsibility for the payments of all charges, fees and expenses incurred pursuant to this Agreement and for care of [Norman Clarke].

*Id.* at ¶ 7. The Admission Agreement further outlines the obligations of the resident and the responsible party regarding the public aid process. Specifically, paragraph 12 provides in pertinent part:

> **PUBLIC AID:** In no event shall Public Aid Participation relieve [Norman Clarke] and/or [the Debtor] from being jointly and severally liable for payments required to be made under the program.

*Id.* at ¶ 12.

Prior to Norman Clarke's admission as a resident of the Creditor, on June 26, 1998, the Debtor was appointed attorney-in-fact by her father pursuant to a Durable General Power of Attorney (the "Power of Attorney"). *See* Exhibit A to Creditor's Brief in Support of its Complaint. One of the reasons that the Debtor and Norman Clarke entered into the Power of Attorney was to liquidate Norman Clarke's assets. The liquidation of his assets was required for Norman Clarke to become eligible for public aid benefits to defray his future expenses at the Creditor facility.

Pursuant to the Power of Attorney, the Debtor, as attorney-in-fact of Norman Clarke, had many powers, including the power to make gifts to Norman Clarke's descendants. *Id.* at p. 7. Another enumerated power was the power to take steps necessary to obtain and maintain Norman Clarke's eligibility for any public benefits and entitlement programs. *Id.* at p. 6. Moreover, the attorney-in-fact had the power to buy and sell property. *Id.* at p. 4. Furthermore, the Power of Attorney entitled the attorney-in-fact to be repaid for all reasonable expenses incurred on Norman Clarke's behalf, but prohibited payment or compensation for services rendered as attorney-in-fact. *Id.* at p. 11. Also, the attorney-in-fact had a duty to provide an accounting of all income received, expenditures or other transactions on an annual basis. *Id.* at p. 7.

The Power of Attorney also specified the powers not granted to the attorney-in-fact. Included in those prohibitions was the lack of power "to use [Norman Clarke's] assets to pay for [the Debtor's] legal obligations." *Id.* at p. 9. The Debtor was also prohibited from "appointing, assigning or designating any of [Norman Clarke's] assets, interests or rights directly or indirectly to herself, her estate, her creditors or creditors of her estate. . . ." *Id.* Finally, the Power of Attorney provided with respect to third party reliance:

> 2. The powers conferred on my Attorney in Fact by this document may be exercised solely by my Attorney in Fact and her authorized signature or act as authorized by this document may be accepted and relied upon by third parties as fully authorized by me and with the same force and effect as if I were competent, and acting on my own behalf.

*Id.*

Norman Clarke owned real property located at 1700 Robin Walk, Hoffman Estates, Illinois (the "Robin Walk Property"). The Power of Attorney specifically gave the Debtor the right to sell the Robin Walk Property in the event Norman Clarke became a permanent resident of a long-term care facility (nursing home). *Id.*

at p. 7. Pursuant to the Power of Attorney, the Debtor sold the Robin Walk Property on September 29, 1999. The net proceeds from the sale were $39,345.15. *See* Exhibit B to Creditor's Complaint and Exhibit B to Creditor's Brief in Support of its Complaint.

As a result of the sale of the Robin Walk Property, the Illinois Department of Public Aid increased the "spend down" for Norman Clarke from $2,000.00 to $41,345.15. *See* Exhibit D to Creditor's Complaint. The term "spend down" refers to the amount the public aid recipient must contribute from his own assets before the public aid benefits commence. The import of the increased spend down was to cause the Illinois Department of Public Aid to withhold any aid until the amount of $41,345.15 was expended.

Following the sale of the Robin Walk Property, on October 13, 1999, the Debtor's then attorney advised the Illinois Department of Public Aid that the Debtor was making a "gift" to herself pursuant to the Power of Attorney's authorization for gifts to descendants of Norman Clarke. *See* Exhibit C to Creditor's Complaint and Exhibit C to Creditor's Brief in Support of its Complaint. The letter stated that the Debtor was making this "gift" to herself because she had spent many months cleaning the Robin Walk Property in order to prepare it for sale. *Id.; see also* Exhibit E to Creditor's Brief in Support of its Complaint (Debtor's calendar evidencing dates and times spent working at the Robin Walk Property).

The Creditor filed the instant complaint on August 3, 2001. Therein, the Creditor argues that the Debtor violated the Power of Attorney when she made the gift of $18,000.00 to herself. The Creditor contends that this action caused Norman Clarke, the principal of the Power of Attorney, to default on his Admission Agreement with the Creditor. The Creditor maintains that the Power of Attorney created a fiduciary relationship between Norman Clarke and the Debtor. The Creditor argues this fiduciary duty owed by the Debtor to Norman Clarke, coupled with the Admission Agreement, also ran to any third-party beneficiary, namely the Creditor. The Creditor states that the funds paid by the Debtor to herself were owed to and diverted from the Creditor and, that the Debtor's act of making a "gift" to herself or reimbursing her time and efforts in cleaning and preparing the Robin Walk Property for sale, caused the Creditor a monetary loss in the sum of $40,343.84. *See* Exhibit F to Creditor's Complaint. The Creditor fails to explain how it arrived at this figure, although it attached an itemized bill showing an outstanding balance of $38,624.36 for Norman Clarke's stay at the Creditor facility. Consequently, according to the Creditor, the Debtor's act in not paying all the net sale proceeds of the Robin Walk Property to it to apply on Norman Clarke's bill, constituted defalcation while acting as a fiduciary as proscribed by 11 U.S.C. § 523(a)(4). The Creditor also seeks undisclosed attorney's fees and costs.

The Debtor, on the other hand, argues that she expended in excess of 1,000 hours cleaning and preparing the Robin Walk Property for sale and that the disbursement was reasonable compensation or reimbursement for the services she rendered. Further, the Debtor states that the Power of Attorney specifically authorized her to disburse these funds to herself as a descendant of Norman Clarke. Moreover, the Debtor contends that the Power of Attorney created a fiduciary relationship only between her and Norman Clarke, and such fiduciary relationship did not extend to the Creditor because the Creditor was not an intended third-party beneficia-

ry at the time of the execution of the Power of Attorney. The Debtor argues that she was a mere guarantor of the debt Norman Clarke owed to the Creditor under the Admission Agreement.

Furthermore, the Debtor maintains that even if a fiduciary relationship existed between her and the Creditor, at best, it is in the nature of a constructive trust and not an express trust, and hence the debt would be dischargeable. Finally, the Debtor contends that if a fiduciary relationship existed between her and the Creditor, and the Court were to find the debt non-dischargeable, the amount should be $18,000.00—the sum the Debtor paid to herself—not the unexplained $40,343.84 amount the Creditor seeks.

This matter was scheduled for trial on June 28, 2002. The parties waived their opportunity to present any testimonial evidence. Instead, they filed briefs and documentary evidence in support of their respective positions. The ultimate issues here are whether the Admission Agreement and the Power or Attorney, when read together, created a fiduciary relationship between the Debtor and the Creditor for purposes of § 523(a)(4), and whether the Debtor's act of "gifting" herself $18,000.00 for the services she performed to clean and prepare the Robin Walk Property for sale constituted "defalcation" under § 523(a)(4).

## III. *DISCUSSION*

### A. *Standards for Dischargeability in the Seventh Circuit*

 The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Harasymiw,* 895 F.2d 1170, 1172 (7th Cir.1990); *Banner Oil Co. v. Bryson (In re Bryson),* 187 B.R. 939, 961 (Bankr.N.D.Ill.1995). The United States Supreme Court has held

that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *See also In re McFarland,* 84 F.3d 943, 946 (7th Cir.), *cert. denied,* 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *In re Scarlata,* 979 F.2d 521, 524 (7th Cir.1992) (quoting *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985)). *Accord In re Reines,* 142 F.3d 970, 972–73 (7th Cir.1998), *cert. denied,* 525 U.S. 1068, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999).

### B. *11 U.S.C. § 523(a)(4)*

 Section 523(a)(4) of the Bankruptcy Code provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). In order for the Creditor to prevail under § 523(a)(4), it must prove that the Debtor committed (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. The Creditor does not allege that the Debtor's actions constituted embezzlement or larceny. Moreover, the Creditor does not argue the fraud alternative theory under the first prong of § 523(a)(4).

 To establish that a debt is non-dischargeable for reason of defalcation while acting in a fiduciary capacity, the Creditor must establish, by a preponderance of the evidence, the existence of an express trust or fiduciary relation, and a debt caused by the Debtor's defalcation while acting as a fiduciary. *Grogan,* 498 U.S. at 291, 111 S.Ct. 654; *In re Woldman,* 92 F.3d 546, 547 (7th Cir.1996). A

threshold inquiry is whether a fiduciary obligation runs from the Debtor to the Creditor under the facts of this matter. Whether a debtor was acting in a fiduciary capacity for purposes of § 523(a)(4) is a question of federal law. *In re Bennett,* 989 F.2d 779, 784 (5th Cir.), *cert. denied,* 510 U.S. 1011, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993).

### 1. *Fiduciary Duty*

▉▉▉▉ The first requirement for application of § 523(a)(4) is that a "fiduciary" relationship exists. To qualify under § 523(a)(4), a fiduciary relation must have an existence independent of a debtor's wrongdoing. *In re Marchiando,* 13 F.3d 1111, 1115–16 (7th Cir.), *cert. denied,* 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). The hallmark of such a relationship is a:

> difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter. The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary. . . . These are all situations in which one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals.

*Id.* at 1116 (citations omitted). Under Illinois law, a number of relationships can constitute fiduciary relationships: attorney and client, *Marchiando,* 13 F.3d at 1115; joint venturers or partners, *Woldman,* 92 F.3d at 547; corporate directors and shareholders, *Marchiando,* 13 F.3d at 1115; and trustee and beneficiary under an express trust. *Id.*

▉▉▉▉ Under Illinois law, an express trust exists where there is (1) intent to create a trust; (2) definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose; and (6) delivery of trust property to the trustee. *Yardley v. Yardley,* 137 Ill.App.3d 747, 760, 92 Ill.Dec. 142, 484 N.E.2d 873, 882 (2d Dist.1985). While fiduciary relationships may arise outside of express trusts, the mere existence of a state law fiduciary relationship may not be sufficient to except from discharge under § 523(a)(4). *Woldman,* 92 F.3d at 547. "[O]nly a subset of fiduciary obligations is encompassed by the word 'fiduciary' in section 523(a)(4)." *Id.* (citation omitted). The Seventh Circuit has made a distinction between a trust or other fiduciary relationship that has "an existence independent of the debtor's wrong and a trust or other fiduciary relation that has no existence before the wrong is committed. A lawyer's fiduciary duty to his client, or a director's duty to his corporation's shareholders, pre-exists any breach of that duty, while in the case of a constructive or resulting trust there is no fiduciary duty until a wrong is committed." *Marchiando,* 13 F.3d at 1115–16. Constructive, resulting and implied trusts do not fall within the confines of § 523(a)(4). *Id.* at 1115. The real distinction is that fiduciary relations that impose actual duties in advance of the breach generally involve a difference in knowledge or power between the fiduciary and principal. Generally, to satisfy the *Marchiando* requirement, the fiduciary must hold a position of ascendancy over the principal. *Id.* at 1116 (citation omitted).

▉▉▉▉ First, the Creditor must establish, by a preponderance of the evidence, the existence of an express trust or fiduciary relationship between it and the Debtor. The Creditor does not allege that an express trust existed between it and the Debtor. Rather, the Creditor contends

that the Admission Agreement, which was signed by the Debtor as the responsible party, coupled with the Power of Attorney, gave rise to an implied or constructive fiduciary relationship between the Debtor and the Creditor. As one leading authority notes, "for the debt to be nondischargeable under section 523(a)(4), it must be directly related to the fiduciary relationship between the debtor and the creditor." 4 L. King, *Collier on Bankruptcy* ¶ 523.10[1][c] at 523–75 (rev. 15th ed.2002). Thus, it is insufficient for purposes of the Creditor's claim against the Debtor to merely establish that the Debtor was a fiduciary to Norman Clarke under the Power of Attorney. The Creditor must also establish that the Debtor was in a fiduciary relation owing it such a level of duties, and not strictly in a debtor-creditor relationship. Under the facts of the matter at bar, this could only occur if the Admission Agreement created a contractual fiduciary relation between the Debtor and the Creditor. *See generally* 3 W. Norton, Jr., *Norton on Bankruptcy Law and Practice 2d* § 47.22 at 47.61 (1997).

■ The Court finds that the Admission Agreement merely created a debtor-creditor relationship between the Debtor and the Creditor by which the Debtor was jointly and severally liable with Norman Clarke for the payment of services and goods provided by the Creditor thereunder. The Debtor signed the Admission Agreement as a responsible party and expressly became jointly and severally liable with Norman Clarke. She did not sign the same as a guardian, trustee or fiduciary. Accordingly, the Admission Agreement, standing alone, does not create a fiduciary relationship between the Debtor and the Creditor. Rather, it is a mere contractual relationship between the Debtor and the Creditor. The Creditor contends, however, that the Admission Agreement coupled with the Power of Attorney creates a fiduciary relationship between it and the Debtor.

■ From the Court's review of the Power of Attorney, it appears to have been prepared to comply and comport with the Illinois Power of Attorney Act, 755 ILCS 45/1–1 *et seq.* That statutory scheme was enacted to allow principals, like Norman Clarke, to appoint agents as their attorneys-in-fact, like the Debtor, to act on their behalf even in periods of disability of the principal, and to be sure that third parties will honor the agent's authority at all times. *See* 755 ILCS 45/2–1. This Act applies to the matter at bar because the Power of Attorney was created after the effective date of the Act. *See* 755 ILCS 45/2–4. More pertinently, the Act establishes that upon the agent's exercise of a power conferred by the principal that the agent shall:

> use due care to act for the benefit of the principal in accordance with the terms of the agency and shall be liable for negligent exercise. An agent who acts with due care for the benefit of the principal shall not be liable or limited merely because the agent also benefits from the act, has individual or conflicting interests in relation to the property.... The agent shall not be liable for any loss due to error of judgment....

755 ILCS 45/2–7.

■ Clearly, an express fiduciary relationship existed between the Debtor as grantee and attorney-in-fact and Norman Clarke as grantor, principal and beneficiary under the Power of Attorney. Although federal law determines who is a "fiduciary" for purposes of § 523(a)(4), state law is relevant in determining whether such a relationship exists. Pursuant to Illinois law, a power of attorney creates a fiduciary relationship as a matter of law. *Simon v. Wilson*, 291 Ill.App.3d 495, 503,

225 Ill.Dec. 800, 684 N.E.2d 791, 797 (1st Dist.1997), *appeal denied,* 176 Ill.2d 593, 229 Ill.Dec. 60, 690 N.E.2d 1387(1998) (citations omitted); *Zachary v. Mills,* 277 Ill.App.3d 601, 607–08, 214 Ill.Dec. 352, 660 N.E.2d 1301, 1305 (4th Dist.1996) (citations omitted). Once a father designates his daughter with his power of attorney, the daughter is responsible as a fiduciary to her father. *In re Estate of Savage,* 259 Ill.App.3d 328, 330, 197 Ill.Dec. 575, 631 N.E.2d 797, 799 (4th Dist.), *appeal denied,* 157 Ill.2d 502, 205 Ill.Dec. 164, 642 N.E.2d 1281 (1994); *see also Boyce v. Fernandes,* 77 F.3d 946, 950 (7th Cir.1996) (under Illinois law, power of attorney creates fiduciary relation).

▮ The Court holds that the Admission Agreement, coupled with the Power of Attorney, fails to establish the requisite § 523(a)(4) fiduciary relationship between the Debtor as fiduciary and the Creditor as principal/beneficiary. The only operative instrument creating a fiduciary relation was the Power of Attorney, which created the fiduciary relationship between the Debtor and Norman Clarke, no other. The Creditor was not a party to the Power of Attorney. Moreover, the Creditor was not the intended beneficiary of the fiduciary relationship between the Debtor and Norman Clarke. Rather, only Norman Clarke was as grantor of the Power of Attorney. The fact that the Debtor had a fiduciary duty to Norman Clarke does not, ipso facto, under the subsequent Admission Agreement, extend or bootstrap that duty to third-party creditors (like the Creditor) of the person owed the duty. The clause in the Power of Attorney, which states that third parties can rely on the actions of the attorney-in-fact as if those actions were taken by Norman Clarke himself, did not confer such status on the Creditor. Rather, the Act merely provides protection and release to the third parties who act in good faith and in reliance on the power of attorney as though they had dealt directly with the principal as a fully competent person. *See* 755 ILCS 45/2–8. Thus, the Court finds that the Creditor failed to establish the existence of an express trust in its favor or a fiduciary relationship between it and the Debtor.

▮ Under applicable Illinois law, a presumption of fraud would attach to a transfer made by the fiduciary for her own use. *See generally Franciscan Sisters Health Care Corp. v. Dean,* 95 Ill.2d 452, 464, 69 Ill.Dec. 960, 448 N.E.2d 872, 877–78 (1983). The presumption has been effectively rebutted by the undisputed evidence and proffer that the Debtor expended substantial time and effort cleaning and preparing the Robin Walk Property for sale, and then reimbursed herself for the expense and services of same pursuant to the gift to descendants authority allowed under the Power of Attorney, in lieu of hiring some third-party service company to complete the work. On the limited record before the Court, no fraud by the Debtor has been argued nor will the Court infer same on the stipulated facts and documents submitted. The Debtor has properly accounted for the $18,000.00 and has not engaged in fraud or defalcation.

The two cases cited by the Creditor in support of its position are clearly distinguishable. First, in *Reliance Ins. Co. v. Wilson (In re Wilson),* 127 B.R. 440 (Bankr.E.D.Mo.1991), the parties stipulated that a judgment that was entered against the debtor and in favor of the creditor was based on defalcation. *Id.* at 443. No such stipulation exists here. Next, *Buchholz v. Cook (In re Cook),* 263 B.R. 249 (Bankr.N.D.Iowa 2001) sharply differs from the matter at bar in that there the debtor failed to properly account for all funds entrusted to him to invest on his

uncle's behalf pursuant to a power of attorney. The debtor contended that the shortfall was due to losses in the stock market. *Id.* at 256. The court found that the debtor's explanation was not supported by the evidence and thus his inability to account for the shortfall in funds constituted defalcation. *Id.* Here, the Debtor has in fact accounted for the funds she gifted to herself.

## 2. *Defalcation*

 Next, the Creditor must establish, by a preponderance of the evidence, that the debt was caused by the Debtor's defalcation while acting as a fiduciary. The Creditor alleges that the Debtor's action constituted defalcation, not fraud. The Creditor contends that the Debtor's act of "gifting" herself $18,000.00 constituted defalcation while acting as a fiduciary. There is no hard and fast definition of "defalcation," the alternative conduct proscribed under the first prong of tortious conduct barred from discharge under § 523(a)(4). The Seventh Circuit, however, has adopted the position, like the Fifth and Sixth Circuits, that mere negligence does not constitute defalcation. *Meyer v. Rigdon*, 36 F.3d 1375, 1382–85 (7th Cir. 1994) (construing "defalcation" under § 523(a)(11)); *In re Johnson*, 691 F.2d 249, 255–57 (6th Cir.1982); *Carey Lumber Co. v. Bell*, 615 F.2d 370, 375–76 (5th Cir. 1980). The Seventh Circuit has not clearly defined the level of tortious conduct necessary to constitute a defalcation in the context of § 523(a)(4); it has only required something more than a negligent breach of a fiduciary duty. *Meyer*, 36 F.3d at 1385. This is something less culpable than intentional fraud. One court has defined defalcation within the context of § 523(a)(4) as "the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." *Strube Celery & Vegetable Co., Inc. v. Zois (In re*

*Zois)*, 201 B.R. 501, 506 (Bankr.N.D.Ill. 1996) (citation omitted). An objective standard is used to determine a defalcation, and intent or bad faith is not a requirement. *See Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 389 (Bankr. N.D.Ill.1994) (citations omitted).

 Even if the Creditor had established an express trust or the existence of a fiduciary relationship, the Court finds that the Creditor failed to establish that the Debtor's act constituted defalcation. The Debtor contends, and the Creditor does not dispute, that the Robin Walk Property required extensive services cleaning and preparing it for sale. Moreover, the Creditor does not dispute that a cleaning service would have charged $18,000.00 for those services. Even though the letter sent to the Illinois Department of Public Aid states that the Debtor was giving herself a "gift," she contends that her attorney chose that word and that such sum was actually reimbursement for her time spent cleaning and preparing the Robin Walk Property for sale.

The Court finds that the Debtor did not misappropriate from either Norman Clarke or the Creditor the $18,000.00. Rather than hire a cleaning service, the Debtor performed those tasks herself. She kept a calendar and entered the days and times she worked at the Robin Walk Property. *See* Exhibit E to Creditor's Brief in Support of Complaint. Thus, she did account for her expenditure of the funds, as required by the Power of Attorney. Additionally, the Power of Attorney specifically provided that the Debtor was entitled to be repaid for all reasonable costs incurred. *See* Exhibit A to Creditor's Brief in Support of its Complaint at p. 11. Moreover, the subject amount was not paid to the Debtor as payment or

compensation for her services as attorney-in-fact. Rather, the sum was for payment of her time and expense rendering the cleaning services. Therefore, the Court finds that the Debtor's act of paying herself the sum of $18,000.00 for services rendered to sell the Robin Walk Property, in lieu of hiring another creditor to do the work, did not constitute defalcation for purposes of § 523(a)(4).

### C. *Request for Attorney's Fees*

Finally, the Court addresses the Creditor's request for unspecified attorney's fees and costs incurred in prosecuting this adversary proceeding. The Creditor failed to cite to any statutory or case authority that entitles it to such an award. Section 523 of the Bankruptcy Code does not provide the Creditor a basis for an award of attorney's fees and costs for prosecution of this matter. Section 523(d) only provides for taxation of costs and fees in favor of a debtor who successfully defends against a § 523(a)(2) dischargeability determination. Accordingly, without an award of attorney's fees under non-bankruptcy law, the fees incurred by the Creditor's attorney cannot be awarded herein, let alone made non-dischargeable. *See Kress v. Kusmierek (In re Kusmierek)*, 224 B.R. 651, 658 (Bankr.N.D.Ill.1998) (absent a state court award of attorney's fees or the existence of a statute authorizing the same, court refused to determine that requested fees would be nondischargeable). Hence, the Court denies the Creditor's request for attorney's fees and costs.

### IV. *CONCLUSION*

For the foregoing reasons, the Court finds that the debt owed by the Debtor to the Creditor is dischargeable.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.